## CALBECK, DEPUTY COMMISSIONER, BUREAU OF EMPLOYEES' COMPENSATION, v. TRAVELERS INSURANCE CO. ET AL.

No. 532. Argued April 23, 1962.—Decided June 4, 1962.*

*Solicitor General Cox* argued the cause for petitioners. With him on the briefs were *Assistant Attorney General Orrick, Bruce J. Terris, Morton Hollander* and *David L. Rose.*

*Louis V. Nelson* argued the cause for Travelers Insurance Co. et al., respondents. With him on the briefs was *Ewell Strong.*

*Charles Kohlmeyer, Jr.* argued the cause and filed a brief for Avondale Shipyards, Inc., respondent.

Briefs of *amici curiae,* urging reversal, were filed by *Raymond H. Kierr* and *Samuel C. Gainsburgh* for Minus Aizen, and by *Herman Wright* for McGuyer's widow and children.

---

*Together with *Donovan, Deputy Commissioner,* v. *Avondale Shipyards, Inc.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

Section 3 (a) of the Longshoremen's and Harbor Workers' Compensation Act provides that compensation shall be paid only for injuries occurring on navigable waters "and if recovery . . . through workmen's compensation proceedings may not validly be provided by State law." [1] In each of these cases the petitioner is a Deputy Commissioner who based an award of compensation under the Act on findings that the employee was engaged at the time of his injury in the work of completing the construction of a vessel afloat on navigable waters. [2]

---

[1] The Act, 44 Stat. 1424, as amended, is comprised in 33 U. S. C. §§ 901–950. Section 3 (a), 33 U. S. C. § 903 (a), reads:

"(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. No compensation shall be payable in respect of the disability or death of—

"(1) A master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net; or

"(2) An officer or employee of the United States or any agency thereof or of any State or foreign government, or of any political subdivision thereof."

[2] In the *Calbeck* case the employee, Roger McGuyer, was a welder in the employ of the Levingston Shipbuilding Company which owns and operates a shipyard on the navigable Sabine River, between Orange, Texas, and Calcasieu Parish, Louisiana. McGuyer worked both on the repair of completed vessels and on vessels under construction. He was injured while working on an uncompleted drilling barge which had been launched and was floating on the Sabine River while its superstructure was under construction.

In the *Donovan* case the employee, Minus Aizen, was also a welder. His employer was Avondale Marine Ways, Inc., which operated two shipyards near New Orleans. Aizen had worked only on new construction although fellow employees worked both on new construc-

116

Before the Longshoremen's Act was passed, this Court had sustained the validity of a state workmen's compensation statute as applied to injuries suffered by an employee engaged in the completion of a launched vessel under construction on navigable waters, *Grant Smith-Porter Ship Co.* v. *Rohde,* 257 U. S. 469, but had made clear that state compensation statutes could not, constitutionally, be applied to injuries to employees engaged in repair work on completed vessels on navigable waters.[3] The court below interpreted § 3 (a) as adopting this distinction and so set aside both awards, thus holding that a shipyard worker's right to compensation under the Act, if his injury is incurred on a vessel, depends not only on whether the vessel is on navigable waters, but also on whether the vessel was under repair rather than under construction. *Avondale Shipyards, Inc.,* v. *Donovan,* 293 F. 2d 51; *Travelers Insurance Co.* v. *Calbeck,* 293 F. 2d 52. We granted certiorari because of the importance of the interpretation of § 3 (a) in the administration of the Act. 368 U. S. 946. We reverse the judgments of the Court of Appeals and affirm the judgments of the District Courts sustaining the awards.

The Court of Appeals' interpretation of § 3 (a) would, if correct, have the effect of excepting from the Act's coverage not only the injuries suffered by employees while engaged in ship construction but also any other injuries—even though incurred on navigable waters and so within

tion and on repair work. He was injured while welding on an oil drilling barge which had been launched and was floating on the navigable waters of the Mississippi River while her construction was being completed.

[3] See *Great Lakes Dredge & Dock Co.* v. *Kierejewski,* 261 U. S. 479; *Gonsalves* v. *Morse Dry Dock & Repair Co.,* 266 U. S. 171; *Robins Dry Dock & Repair Co.* v. *Dahl,* 266 U. S. 449. See also *Baizley Iron Works* v. *Span,* 281 U. S. 222, 230–232.

the reach of Congress—for which a state law could, constitutionally, provide compensation. But the Court of Appeals' interpretation is incorrect. The history of the Act, and of § 3 (a) in particular, contravenes it; and our decisions construing § 3 (a) have rejected it. Our conclusion is that Congress invoked its constitutional power so as to provide compensation for all injuries sustained by employees on navigable waters [4] whether or not a particular injury might also have been within the constitutional reach of a state workmen's compensation law.

The Longshoremen's Act was passed in 1927. The Congress which enacted it would have preferred to leave to state compensation laws the matter of injuries sustained by employees on navigable waters within state boundaries. However, in 1917 this Court had decided in *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, that the New York Compensation Act could not, constitutionally, be applied to an injury sustained on a gangplank between a vessel and a wharf.[5] It was held that the matter was outside state cognizance and exclusively within federal maritime jurisdiction, since to hold otherwise would impair the harmony and uniformity which the constitutional grant to the Federal Government of the admiralty power was meant to assure. While the Court acknowledged

---

[4] Our use of the term "employees" throughout this opinion excludes those special categories described in subsections (1) and (2) of § 3 (a), see note 1, *supra;* and assumes that they are employed by an "employer" as defined in § 2 (4), 33 U. S. C. § 902 (4), *i. e.,* "an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any dry dock)."

[5] The constitutionality of the New York statute in other respects was sustained at the same Term. *New York Central R. Co.* v. *White,* 243 U. S. 188. The validity of the Washington and Iowa statutes was also upheld. *Mountain Timber Co.* v. *Washington,* 243 U. S. 219; *Hawkins* v. *Bleakly,* 243 U. S. 210.

that "it would be difficult, if not impossible, to define with exactness just how far the general maritime law may be changed, modified, or affected by state legislation," 244 U. S., at 216, the opinion appeared to foreclose the application of a state compensation remedy to any maritime injury.

The *Jensen* decision deprived many thousands of employees of the benefits of workmen's compensation. Congress twice attempted to deal with the situation by legislation expressly allowing state compensation statutes to operate. Act of October 6, 1917, 40 Stat. 395; Act of June 10, 1922, 42 Stat. 634. But this Court struck down both statutes as unconstitutional delegations to the States of the legislative power of Congress, and as tending to defeat the purpose of the Constitution to achieve harmony and uniformity in the maritime law. *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149; *Washington* v. *Dawson & Co.,* 264 U. S. 219.

Meanwhile the Court handed down a number of decisions which appeared to modify *Jensen* by permitting States to apply their statutes to some maritime injuries. But we must candidly acknowledge that the decisions between 1917 and 1926 produced no reliable determinant of valid state law coverage. In *Western Fuel Co.* v. *Garcia,* 257 U. S. 233, decided in 1921, the Court upheld the jurisdiction of a United States District Court to entertain a libel in admiralty for damages for the death of a longshoreman under a state wrongful death statute. The Court reasoned that while the subject was maritime it was "local in character" and that application of the state statute "will not work material prejudice to the characteristic features of the general maritime law, nor interfere with the proper harmony and uniformity of that law in its international and interstate relations." 257 U. S., at 242.

Just a month later the Court decided *Grant Smith-Porter Ship Co.* v. *Rohde, supra,* where, as in the cases before us, a shipbuilder's employee was injured while at work on new construction afloat on navigable waters. He recovered a judgment under a libel in admiralty, although Oregon had a state workmen's compensation law which made the remedy thereunder exclusive of all other claims against the employer on account of the injury. This Court reversed that judgment, holding that the accident was among those "certain local matters regulation of which [by the States] would work no material prejudice to the general maritime law." 257 U. S., at 477.

No dependable definition of the area—described as "maritime but local," or "of local concern"—where state laws could apply ever emerged from the many cases which dealt with the matter in this and the lower courts. The surest that could be said was that any particular injury might be within the area of "local concern," depending upon its peculiar facts. In numerous situations state acts were considered inapplicable because they were thought to work material prejudice to the characteristic features of the general maritime law, particularly in cases of employees engaged in repair work.[6] On the other hand, awards under state compensation acts were sustained in situations wherein the effect on uniformity was often difficult to distinguish from those found to be outside the purview of state laws.[7]

Thus, the problem which confronted Congress in 1927 had two facets. One was that the failure of Congress'

[6] See, *e. g., Great Lakes Dredge & Dock Co.* v. *Kierejewski,* 261 U. S. 479; *Gonsalves* v. *Morse Dry Dock & Repair Co.,* 266 U. S. 171; *Robins Dry Dock & Repair Co.* v. *Dahl,* 266 U. S. 449.

[7] See, *e. g., State Commission* v. *Nordenholt Corp.,* 259 U. S. 263; *Millers' Indemnity Underwriters* v. *Braud,* 270 U. S. 59.

attempts to shelter the employees under state compensation laws rendered it certain that for many maritime injuries no compensation remedy was available. The other was that the course of judicial decision had created substantial working uncertainty in the administration of compensation. Congress turned to a uniform federal compensation law as an instrument for dealing with both facets. Indeed, the Court in *Dawson* had invited such consideration, saying: "Without doubt Congress has power to alter, amend or revise the maritime law by statutes of general application embodying its will and judgment. This power, we think, would permit enactment of a general employers' liability law or general provisions for compensating injured employees; but it may not be delegated to the several States." 264 U. S., at 227.

The proposal of a uniform federal compensation act had the unqualified support of both employers and employee representatives. Workmen's compensation had gained wide acceptance throughout the country and State after State was enacting it.[8] But hard battles were fought in committee and on the floor in both Houses of Congress over the form of the law. The bill introduced in the Senate, S. 3170, became the basis of the law.

There emerges from the complete legislative history[9] a congressional desire for a statute which would provide federal compensation for all injuries to employees on navigable waters; in every case, that is, where *Jensen*

---

[8] See 1 Larson, The Law of Workmen's Compensation, §§ 4.10–5.30.

[9] Hearings before the Senate Judiciary Committee on S. 3170, 69th Cong., 1st Sess.; Hearings before the House Judiciary Committee on S. 3170, 69th Cong., 1st Sess.; S. Rep. No. 973, 69th Cong., 1st Sess.; H. R. Rep. No. 1767, 69th Cong., 2d Sess. See also H. R. Rep. No. 1190, 69th Cong., 1st Sess. (accompanying H. R. 12063); Hearings before the House Judiciary Committee on H. R. 9498, 69th Cong., 1st Sess.

might have seemed to preclude state compensation. The statute's framers adopted this scheme in the Act because they meant to assure the existence of a compensation remedy for every such injury,[10] without leav-

[10] See S. Rep. No. 973, 69th Cong., 1st Sess., at 16:

"The purpose of this bill is to provide for compensation, in the stead of liability, for a class of employees commonly known as 'longshoremen.' These men are mainly employed in loading, unloading, refitting, and repairing ships; but it should be remarked that injuries occurring in loading or unloading are not covered unless they occur on the ship or between the wharf and the ship so as to bring them within the maritime jurisdiction of the United States. There are in the neighborhood of 300,000 men so employed in the entire country.

"The committee deems it unnecessary to comment upon the modern change in the relation between employers and employees establishing systems of compensation as distinguished from liability. Nearly every State in the Union has a compensation law through which employees are compensated for injuries occurring in the course of their employment without regard to negligence on the part of the employer or contributory negligence on the part of the employee. If longshoremen could avail themselves of the benefits of State compensation laws, there would be no occasion for this legislation; but, unfortunately, they are excluded from these laws by reason of the character of their employment; and they are not only excluded but the Supreme Court has more than once held that Federal legislation can not, constitutionally, be enacted that will apply State laws to this occupation. (Southern Pacific Co. v. Jensen, 244 U. S. 205; Knickerbocker Ice Co. v. Stewart, 253 U. S. 149; Washington v. Dawson & Co., 264 U. S. 219.)

"It thus appears that there is no way of giving to these hard-working men, engaged in a somewhat hazardous employment, the justice involved in the modern principle of compensation without enacting a uniform compensation statute."

To like effect is H. R. Rep. No. 1190, 69th Cong., 1st Sess., at 1, 3:

"This bill provides compensation for employees injured . . . in certain maritime employments . . . . The principal wage earners provided for are longshoremen . . . . Next in importance are the ship repairmen—carpenters, painters, boiler makers, etc. Congressional action is necessary if these wage earners are to be given the benefits of workmen's compensation owing to the provisions of

ing employees at the mercy of the uncertainty, expense, and delay of fighting out in litigation whether their particular cases fell within or without state acts under the "local concern" doctrine.

The gravity of the problem of uncertainty was emphasized when § 3 of S. 3170 in its original form was under discussion at the Senate Hearings. That version of § 3 provided: "This act shall apply to any employment performed on a place within the admiralty jurisdiction of the United States, *except employment of local concern and of no direct relation to navigation and commerce;* but shall not apply to employment as master or member of the crew of a vessel." · (Emphasis supplied.) The Chairman of the Senate Committee perceived that to create an exemption for "employment of local concern" threatened to perpetuate the very uncertainties of coverage that Congress wished to avoid.[11] The danger was

the Constitution of the United States and the decisions of the Supreme Court thereunder. . . . The committee . . . recommends that this humanitarian legislation be speedily enacted into law so that this class of workers, practically the only class without the benefit of workmen's compensation, may be afforded this protection, which has come to be almost universally recognized as necessary in the interest of social justice between employer and employee."

H. R. Rep. No. 1767, 69th Cong., 2d Sess., at 20, makes clear that the House was desirous of legislation whereby Congress could

"discharge its obligation to the maritime workers placed under their jurisdiction by the Constitution of the United States by providing for them a law whereby they may receive the benefits of workmen's compensation and thus afford them the same remedies that have been provided by legislation for those killed or injured in the course of their employment in nearly every State in the Union."

[11] The following colloquy occurred between the Chairman, Senator Cummins, and an employer spokesman who was testifying:

"The CHAIRMAN. That term [employment of local concern] was used in one of the decisions of the Supreme Court, probably, but, in its application, just what does it mean?

[*Footnote 11 continued on p. 123*]

underlined by objections on behalf of two large employer groups. They not only expressed concern about the practical problems created by the line between new construction and repair, Senate Hearings, at 92–93, but also about the broader implications of the wording: "This provision is indefinite. The exception of 'employment of local concern and of no direct relation to navigation and commerce' is vague and will be the subject of continual litigation. Innumerable claims will become legal questions requiring determination by the courts." Senate Hearings, at 95.

We are not privy to the Committee deliberations at which it was decided to drop the "local concern" language from § 3 and substitute the language now in the statute. We think it a reasonable inference that the Committee concluded that the exemption for "employment of local

---

"Mr. BROWN. Unless there is something in connection with admiralty law which qualifies it, I should say it is a very vague thing, and we can not understand what it means. The phrase 'of no direct relation to navigation and commerce' is another questionable proposition, whether the coverage of this bill might not apply to a man on the docks. Some of my friends seem to think that it would not apply to the man on the docks, that the State laws now apply, and it was said in the same decision [the witness referred to *Rohde, supra,* but the quoted language is found in *Nordenholt, supra,* note 7, at 276]:

"There is no pertinent Federal statute and application of a local law will not work material prejudice to any characteristic feature of the maritime law.

.      .      .      .      .

"The CHAIRMAN. We certainly can find some language that will describe these people that we intend to protect, but I am not sure whether this is the most accurate language that can be found.

"Mr. BROWN. I think that is true. I think that you could not only find language that would prescribe the coverage accurately, but I think that language could be devised that would be eminently satisfactory to everybody in [an] act that would incorporate the purposes which are, perhaps, behind this." Senate Hearings, at 57.

concern" would defeat the objective of avoiding the uncertainty created by *Jensen* and its progeny.

The action of the House Committee, when S. 3170 as revised in the Senate came before it, discloses similar preoccupations. The House Committee rewrote § 3 to omit both the original "local concern" language and the Senate substitute.[12] A parliamentary obstacle on an unrelated issue led to the House Committee's finally accepting the Senate version.[13]

In sum, it appears that the Longshoremen's Act was designed to ensure that a compensation remedy existed for all injuries sustained by employees on navigable waters, and to avoid uncertainty as to the source, state or federal, of that remedy. Section 3 (a) should, then, be construed to achieve these purposes. Plainly, the Court of Appeals' interpretation, fixing the boundaries of federal coverage where the outer limits of state competence had been left by the pre-1927 constitutional decisions, does not achieve them.

In the first place, the contours of the "local concern" concept were and have remained necessarily vague and

---

[12] Section 3 as redrafted by the House Committee, H. R. Rep. No. 1767, 69th Cong., 2d Sess., at 2, was as follows:

"SEC. 3. This act shall apply to any maritime employment performed—

"(a) Upon the navigable waters of the United States, including any dry dock; or

"(b) As master or member of a crew of a barge, lighter, tug, dredge, vessel, or other ocean, lake, river, canal, harbor, or floating craft owned by a citizen of the United States."

[13] The House Committee could not obtain a rule from the House Rules Committee until it amended the bill to exclude seamen from coverage. 68 Cong. Rec. 5410, 5412. Rather than rewrite § 3 again the Committee adopted the Senate version. See *id.*, 5403–5404, 5410, 5412, explaining that the effect was to exclude seamen from coverage.

uncertain. There has never been any method of staking them out except litigation in particular cases.

In the second place, to conclude that federal coverage extends to the limits of navigable waters, except in those cases where a state compensation remedy "may" constitutionally be provided, would mean that, contrary to the congressional purpose, some injuries to employees on navigable waters might not be compensable under any statute. A vacuum would exist as to any injury which, although occurring within the constitutional domain of "local concern," was in fact not covered by any state statute. A restriction of federal coverage short of the limits of the maritime jurisdiction could have avoided defeating the objective of assuring a compensation remedy for every injury on navigable waters only if Congress had provided that federal compensation would reach any case not actually covered by a state statute. But in order to have accomplished this result, the statute would have had to withdraw federal coverage, not wherever a state compensation remedy "may be" validly provided, but only wherever a state compensation remedy "is" validly provided. Even if a court could properly read "may be" as meaning "is," such a reading would make federal coverage in the "local concern" area depend on whether or not a state legislature had taken certain action—an intention plainly not to be imputed to a Congress whose recent efforts to leave the matter entirely to the States had twice been struck down as unconstitutional delegations of congressional power.

Finally, there would have been no imaginable purpose in carving the area of "local concern" out of the federal coverage except to leave the greatest possible number of cases exclusively to the States. The price of such an objective would have included the adoption of whatever seemingly anomalous distinctions the courts might have

developed in articulating the contours of "local concern," as well as the risk of a total failure of compensation in cases within the "local concern" realm for which no state compensation had been provided. And in any event, a congressional purpose to leave the maximum possible business exclusively to the States would negate the Court of Appeals' reading of the line of demarcation as a static one fixed at pre-1927 constitutional decisions. Such a purpose would require, rather, that federal coverage expand and recede in harness with developments in constitutional interpretation as to the scope of state power to compensate injuries on navigable waters. But that would mean that every litigation raising an issue of federal coverage would raise an issue of constitutional dimension, with all that that implies; and that each and every award of federal compensation would equally be a constitutionally premised denial of state competence in a like situation. We cannot conclude that Congress imposed such a burden on the administration of compensation by thus perpetuating the confusion generated by *Jensen.* To dispel that confusion was one of the chief purposes of the Longshoremen's Act.

We conclude that Congress used the phrase "if recovery . . . may not validly be provided by State law" in a sense consistent with the delineation of coverage as reaching injuries occurring on navigable waters. By that language Congress reiterated that the Act reached all those cases of injury to employees on navigable waters as to which *Jensen, Knickerbocker* and *Dawson* had rendered questionable the availability of a state compensation remedy.[14] Congress brought under the coverage of the

---

[14] The Committee reports, note 10, *supra*, make no reference to the "local concern" doctrine or the cases applying it. They explain

Act all such injuries whether or not a particular one was also within the constitutional reach of a state workmen's compensation law.[15]

Our previous decisions under the Act are entirely consistent with our conclusion. In *Parker* v. *Motor Boat Sales, Inc.*, 314 U. S. 244, an employee of a seller of small boats, maritime supplies and outboard motors, hired primarily as a janitor and porter, was drowned when a boat in which he was riding capsized on the James River off Richmond, Virginia. The boat belonged to a customer of his employer and he and a fellow employee were testing one of the employer's outboard motors for which the boatowner was a prospective purchaser. The Court of Appeals for the Fourth Circuit had held that the employee's work was "so local in character" that Virginia could validly have included it under a state workmen's compensation act, and so had set aside an award to the employee's dependents under the Longshoremen's Act. This Court reversed. We noted that "it is not doubted that Congress could constitutionally have provided for recovery under a federal statute in this kind of situation. The question is whether Congress has so provided in this

---

the problem in terms of the limitations on the availability of state remedies imposed by the Court's decisions in *Jensen, Knickerbocker,* and *Dawson.*

[15] We attach no significance to Opinion No. 7, September 2, 1927, of the Employees' Compensation Commission (now the Bureau of Employees' Compensation) stating that the Commission "will take no action under the longshoremen's act against an employer engaged only in the construction of vessels who does not comply with the act, nor against any employer engaged in the construction and repair of vessels who secures payment of compensation to employees while employed on repair work on a vessel in a dry dock or on marine ways." The Department was not foreclosed in the instant cases from changing an interpretation of the statute which was clear error. *Automobile Club of Michigan* v. *Commissioner*, 353 U. S. 180.

128

statute" in the light of § 3 (a). 314 U. S., at 248. The Court held that § 3 (a) did not exclude coverage under the Act, saying: "There can be no doubt that the purpose of the Act was to provide for federal compensation in the area which the specific decisions referred to [in the Senate Report—*Jensen, Knickerbocker,* and *Dawson*—] placed beyond the reach of the states. The proviso permitting recovery only where compensation 'may not validly be provided by State law' cannot be read in a manner that would defeat this purpose." 314 U. S., at 249–250. We thus held that whatever may be § 3 (a)'s "subtraction from the scope of the Act," *id.,* at 249, the Act's adoption of the *Jensen* line between admiralty and state jurisdiction as the limit of federal coverage included no exception for matters of "local concern."

In *Davis* v. *Department of Labor,* 317 U. S. 249, a structural steel worker engaged in dismantling a bridge across a navigable river was cutting and stowing dismantled steel in a barge when he fell into the river from the barge and was drowned. His dependents sought compensation under the state act and this Court held that it could be applied. The result was not predicated on the ground that the employment was "maritime but local," and so outside the coverage of the Longshoremen's Act. Rather the Court viewed the case as in a "twilight zone" where the applicability of state law was "extremely difficult" to determine, and resolved the doubt, of course, in favor of the constitutionality of the application of state law. At the same time, the Court indicated that compensation might also have been sought under the Longshoremen's Act and that an award under that Act in the very same circumstances would have been supportable, pointing out that the Act adopts "the *Jensen* line of demarcation." 317 U. S., at 256. The conclusion that the Longshoremen's Act might have applied without regard

to whether the situation might be "maritime but local" plainly implies a rejection of any reading of § 3 (a) to exclude coverage in such situation.

The issue in *Avondale Marine Ways, Inc.,* v. *Henderson,* 346 U. S. 366, was whether compensation was available under the Longshoremen's Act for the death of an employee killed while engaged in the repair of a vessel which was then physically located on land, but on a marine railway. Since a marine railway was considered to be a "dry dock," the injury satisfied § 3 (a)'s requirement that it occur "upon . . . navigable waters," defined in § 3 as "including any dry dock." At the same time, since the injury did, in a physical sense, occur on land, there is little doubt that a state compensation act could validly have been applied to it. See *State Commission* v. *Nordenholt Corp.,* 259 U. S. 263. Nevertheless, this Court affirmed an award of compensation under the Federal Act in a *per curiam* opinion.

The legislative history and our decisions had been read consistently with the views expressed herein by the Court of Appeals for the Fifth Circuit before the decisions in the present cases. Judge Hutcheson said for the court in *De Bardeleben Coal Corp.* v. *Henderson,* 142 F. 2d 481, 483–484:

> "Before the Parker case was decided . . . this court, in Continental Casualty Co. v. Lawson, 5 Cir., 64 F. 2d 802, 804, announced the view that the federal compensation laws should be liberally construed to cover every case where the injury occurred on navigable waters and where within the rule of [*Jensen*] . . . the action would have been in admiralty. In that case we said:
>
> " 'The question whether jurisdiction over a maritime tort could be asserted under the compensation

laws of the states, or existed exclusively in admiralty, was an important one when the decisions were rendered in the Rohde . . . and other similar cases . . . but since the passage of this act (the Federal Workmen's Compensation Act) the importance of that question has largely disappeared. . . . The elaborate provisions of the Act, viewed in the light of prior Congressional legislation as interpreted by the Supreme Court, leaves no room for doubt, as it appears to us, that Congress intended to exercise to the fullest extent all the power and jurisdiction it had over the subject-matter. . . .'

"The Parker case, supra, substantially adopts this view . . . . As the Parker case pointed out, it is not at all necessary now to redetermine the correctness vel non of the Jensen case or of any of [its] brood . . . . It is sufficient to say that Congress intended the compensation act to have a coverage co-extensive with the limits of its authority and that the provision 'if recovery . . . may not validly be provided by State law' was placed in the act not as a relinquishment of any part of the field which Congress could validly occupy but only to save the act from judicial condemnation, by making it clear that it did not intend to legislate beyond its constitutional powers. . . . In the application of the act, therefore, the broadest ground it permits of should be taken. No ground should be yielded to state jurisdiction in cases falling within the principle of the Jensen case merely because the Supreme Court, before the Federal Compensation Law went into effect, did here a little, there a little, chip and whittle Jensen down in the mass of conflicting and contradictory decisions in which it advanced and applied the 'local concern' doctrine to save to employees

injured on navigable waters, and otherwise remediless, the remedies state compensation laws afforded them. . . . This is what we held in the Lawson case, what the Supreme Court held in the Parker case, supra. . . ."

We turn finally to a question raised only in *Donovan* v. *Avondale Shipyards*. The employer contends that the employee accepted benefits under the Louisiana State Compensation Act and that this constitutes an election of remedies which bars prosecution of his claim under the Longshoremen's Act. Compensation payments may be made under the Louisiana Compensation Act without a prior administrative proceeding. Before the federal claim was filed Avondale made payments to the employee for some two years and three months at the maximum rate provided by the Louisiana statute. The employee accepted the checks which bore a notation on their face that they were payments of compensation under the state act. In addition Avondale advanced a substantial sum to the employee to be credited against future compensation payments. Avondale also paid medical expenses for the employee's account in excess of the maximum liability imposed by the Louisiana statute. In the compensation order entered by Deputy Commissioner Donovan under the Longshoremen's Act the full amount of all payments made by the employer was credited against the award, and no impermissible double recovery is possible. We hold that the acceptance of the payments does not constitute an election of the remedy under state law precluding recovery under the Longshoremen's Act. Nothing in the statute requires a contrary result. And we agree that the circumstances do not support a finding of a binding election to look solely to the state law for recovery. *Massachusetts Bonding & Insurance Co.* v. *Lawson*, 149

F. 2d 853; *Newport News Shipbuilding & Dry Dock Co.* v. *O'Hearne*, 192 F. 2d 968; *Western Boat Building Co.* v. *O'Leary*, 198 F. 2d 409.[16]

The judgments of the Court of Appeals are reversed and the judgments of the District Courts are affirmed.

*It is so ordered.*

Mr. Justice Frankfurter took no part in the consideration or decision of this case.

Mr. Justice Stewart, whom Mr. Justice Harlan joins, dissenting.

In the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C. §§ 901–950, Congress carefully provided for the recovery of benefits only "if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law." 33 U. S. C. § 903 (a). Now, thirty-five years later, the Court concludes that Congress did not really mean what it said. I cannot join in this exercise in judicial legerdemain. I think the statute still means what it says, and what it has always been thought to mean—namely, that there can be no recovery under the Act in cases where the State may constitutionally confer a workmen's compensation remedy. While the result reached today may be a desirable one, it is simply not what the law provides.

I seriously doubt whether statutory language as clear as that in 33 U. S. C. § 903 (a) could ever be ignored in the name of effectuating the supposed "Congressional desire." Be that as it may, this particular statutory lan-

---

[16] Section 5 of the Longshoremen's Act, 33 U. S. C. § 905, which makes liability under the Act "exclusive . . . of all other liability . . . to the employee, his legal representative . . . and anyone otherwise entitled to recover damages . . . at law or in admiralty . . ." is not involved in this case.

guage does in fact reflect the purpose of Congress, which was only to provide compensation for those whom this Court's decisions had barred from the benefits of state workmen's compensation laws. And at the time of the passage of this federal law the Court had squarely held, as Congress well knew, that state workmen's compensation remedies *were* constitutionally available to workers who, as in the present cases, were engaged in new ship construction on navigable waters.

The Longshoremen's and Harbor Workers' Compensation Act was the culmination of a series of events beginning with this Court's decision in *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, which held that the New York Workmen's Compensation Act could not constitutionally be applied to a stevedore unloading a vessel on navigable waters, because to do so would impair the uniformity of the general maritime law. Within five months after the *Jensen* decision Congress passed legislation which attempted to give injured maritime employees "the rights and remedies under the workmen's compensation law of any State." 40 Stat. 395. This legislation was declared unconstitutional as an invalid attempt to delegate federal power to the States. *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149. A second statute, 42 Stat. 634, similar in approach to the first, was declared invalid in *Washington* v. *Dawson & Co.,* 264 U. S. 219.

Meanwhile, the Court was backing away somewhat from *Jensen* by recognizing that where the general employment and particular activities connected with an injury or death were local in character, though maritime in nature, state law could provide redress without disturbing the uniformity of the general maritime law. The maritime but local doctrine, first applied in connection with a state wrongful death statute, *Western Fuel Co.* v. *Garcia,* 257 U. S. 233, provided the basis for holding that a state compensation act could be applied to a worker

134

engaged in the construction of a new vessel which, while uncompleted, was afloat on navigable waters. *Grant Smith-Porter Ship Co.* v. *Rohde,* 257 U. S. 469.[1]

Against this background Congress made its third and ultimately successful attempt to provide compensation for maritime employees deprived by the *Jensen* rule of state compensation remedies. Seizing upon a suggestion made by the Court in *Washington* v. *Dawson & Co., supra,* Congress turned its attention in the direction of a uniform federal compensation act. The Longshoremen's and Harbor Workers' Compensation Act was the result. In the previous two attempts to circumvent *Jensen* Congress had indicated its belief that the compensation remedy could best be supplied by the States. It is obvious that in the new Act Congress did not depart from this basic approach, either by making federal law applicable where state law could apply, or by giving the injured employee a choice of remedies. Congress had simply been informed by decisions of this Court that a compensation remedy could be provided for certain maritime injuries only through a uniform federal law, and the federal legislation was enacted only to fill the gap created by those decisions.

The legislative materials connected with the Act fully support this conclusion. It was repeatedly emphasized that the purpose of the Act was to provide a compensation remedy for those who could not obtain such relief under state law. "If longshoremen could avail themselves of the benefits of State compensation laws, there would be no occasion for this legislation; but, unfortu-

---

[1] During this same period the Court consistently held that the principles of *Jensen* prohibited the application of state compensation laws to workers engaged in the repair of existing vessels. *Robins Dry Dock & Repair Co.* v. *Dahl,* 266 U. S. 449; *Gonsalves* v. *Morse Dry Dock & Repair Co.,* 266 U. S. 171; *Great Lakes Dredge & Dock Co.* v. *Kierejewski,* 261 U. S. 479.

nately, they are excluded from these laws by reason of the character of their employment; and they are not only excluded but the Supreme Court has more than once held that Federal legislation can not, constitutionally, be enacted that will apply State laws to this occupation." S. Rep. No. 973, 69th Cong., 1st Sess., at 16. "The committee . . . recommends that this humanitarian legislation be speedily enacted into law so that this class of workers, practically the only class without the benefit of workmen's compensation, may be afforded this protection . . . ." H. R. Rep. No. 1190, 69th Cong., 1st Sess., at 3. The chairman of the subcommittee conducting hearings on the bill categorically stated that "we are proceeding on the theory that these people can not be compensated under the New York compensation law or any other compensation law." Hearings before a Subcommittee of the Senate Judiciary Committee on S. 3170, 69th Cong., 1st Sess., at 84. Similar statements were made by those who spoke during the committee hearings on the proposed legislation.[2] Several witnesses pointed out that the statute applied to but two categories of workers, longshoremen and those involved in ship repair,[3] the classes of employees denied relief under state compensation acts by the *Jensen* case and the decisions which followed it.[4]

---

[2] Hearings before the House Judiciary Committee on H. R. 9498, 69th Cong., 1st Sess., at 39, 118; Hearings before a Subcommittee of the Senate Judiciary Committee on S. 3170, 69th Cong., 1st Sess., at 22, 25–27, 31, 38, 85.

[3] Hearings before the House Judiciary Committee on S. 3170, 69th Cong., 1st Sess., at 141; Hearings before the House Judiciary Committee on H. R. 9498, 69th Cong., 1st Sess., at 44, 119; Hearings before a Subcommittee of the Senate Judiciary Committee on S. 3170, 69th Cong., 1st Sess., at 80.

[4] The Court places heavy reliance on the deletion of the so-called "local concern" language from the original bill, pointing out that this language had been objected to as vague and uncertain. But it is apparent that the objections went to the possibility that the language

The meaning of 33 U. S. C. § 903 (a) can hardly be deemed a question of first impression. In the thirty-five years since its enactment this provision has been before the Court many times. The Court has consistently said that the Act does not apply to injuries on navigable waters where a State can constitutionally provide a compensation remedy. All the commentators have agreed.[5] And the administrators of the Act have so held, specifically with respect to new ship construction.[6]

In order to avoid the harsh results which the uncertainties of this statutory provision could sometimes produce, the Court in *Davis* v. *Department of Labor,* 317 U. S. 249, developed the theory of the twilight zone. There we reversed a decision of the Washington Supreme Court which had held that a State could not constitutionally make a compensation award to the widow of a workman drowned in a navigable river while dismantling a drawbridge. Relying on the language of § 903 (a) the Court pointed out that "Congress made clear its purpose to permit state compensation protection whenever possible . . . ." *Id.,* at 252–253. The Court went on to note that harbor workers and longshoremen were clearly protected by the Federal Act but that "employees such as decedent

---

"except employment of local concern and of no direct relation to navigation and commerce" might not accurately define the line beyond which state law could be applied—a difficulty which was easily removed by making the statute inapplicable where a remedy could "validly be provided by State law."

[5] See Gilmore and Black, Admiralty, 346; Robinson, Admiralty, 110; Rodes, Workmen's Compensation for Maritime Employees: Obscurity in the Twilight Zone, 68 Harv. L. Rev. 637, 638–639; Morrison, Workmen's Compensation and the Maritime Law, 38 Yale L. J. 472, 500; Comment, 67 Yale L. J. 1205, 1210–1211.

[6] See Opinion No. 7, September 2, 1927, of the Employees' Compensation Commission, discussed in n. 15 of the Court's opinion, *ante,* p. 127. This ruling was followed until 1959, a span of thirty-two years.

here, occupy that shadowy area within which, at some undefined and undefinable point, state laws can validly provide compensation." It was noted that both the Federal Act and the state compensation statute "show clearly that neither was intended to encroach on the field occupied by the other." *Id.*, at 255. Since this "jurisdictional dilemma" made it difficult for an injured worker to determine on which side of the line his particular case fell, the result in some cases had been that he obtained no compensation at all. In this "twilight zone" where the facts of a given case might place an injured worker on either side of the line, the Court held that it would give great weight to the administrative findings in cases brought under the Federal Act, and to the presumption of constitutionality in cases arising under state statutes. Because of this presumption of constitutionality the claimant in *Davis* was allowed her state remedy.[7]

Whatever else may be said of the *Davis* decision, it thus clearly rested on a construction of the statute precisely opposite to that adopted by the Court today. Indeed, if today's decision is correct, then there was no reason for the "twilight zone" doctrine worked out with such travail in *Davis*. For the Court now holds that the problem which led to the *Davis* decision never really existed. Yet as recently as 1959 the Court began a *per curiam* opinion with this topic sentence: "By its terms, the Longshoremen's and Harbor Workers' Compensation Act does not apply 'if recovery for the disability or death through workmen's compensation proceedings *may . . . validly be provided by State law.' "   *Hahn* v. *Ross Island*

---

[7] To achieve the result reached in *Davis* after today's decision would require the Court to ignore still another provision of the Federal Act—§ 905—which makes federal compensation the exclusive remedy when the Federal Act is clearly applicable.

*Sand & Gravel Co.*, 358 U. S. 272. Today the Court simply removes these "terms" from the Act.[8]

In my view the decision of the Court of Appeals in these cases was correct. For almost forty years it has been unequivocally recognized that for those employed on new ship construction recovery for disability or death through workmen's compensation may validly be provided by state law. *Grant Smith-Porter Ship Co.* v. *Rohde, supra.* In one of the cases before us the claimant has actually been paid benefits under the Louisiana Compensation Act. In the other a claim under the Texas Act is pending and would clearly be allowed. See *Travelers Ins. Co.* v. *Gonzalez,* 351 S. W. 2d 374. These cases, therefore, were not by any stretch of the imagination within the twilight zone. The Federal Act is thus by its terms inapplicable.

I would affirm.

---

[8] The Court's opinion places heavy reliance on *Parker* v. *Motor Boat Sales,* 314 U. S. 244. I cannot understand why. For in *Parker* the Court recognized that the proviso in § 903 (a) was "a subtraction from the scope of the Act." *Id.*, at 249. The Court today holds to the contrary. Moreover, any possible doubt as to the basis of the *Parker* decision was resolved in *Davis,* where the Court explained *Parker* in terms of the twilight-zone rule. 317 U. S., at 257.