329 F.2d 504
 BOSTON METALS COMPANY, and Pennsylvania Threshermen &
Farmers' Mutual Insurance Company, Appellants,
v.
Stephen O'HEARNE, Deputy Commissioner, Fourth Compensation
District, Appellee.
 No. 9163.
 United States Court of Appeals Fourth Circuit.
 Argued Nov. 18, 1963.
Decided March 9, 1964.
 
 1
 Richard C. Whiteford, Baltimore, Md., for appellants.
 
 
 2
 Leavenworth Colby, Atty. Dept. of Justice (John W. Douglas, Asst. Atty. Gen., Morton Hollander and Allan J. Weiss, Attys. Dept. of Justice, Joseph D. Tydings, U.S. Atty., and Daniel F. McMullen, Jr., Asst. U.S. Atty., on brief), for appellee.
 
 
 3
 Before HAYNSWORTH and BRYAN, Circuit Judges, and FIELD, District judge.
 
 
 4
 FIELD, District Judge.
 
 
 5
 This is an appeal from an order of the District Court affirming a decision and order of the Deputy Commissioner awarding to the widow of Richard Henry Harris, deceased, compensation benefits pursuant to the provisions of the Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927, 44 Stat. 1424, 33 U.S.C.A. 901 et seq. Here, as they did in the Court below, appellants challenge the jurisdiction of the Commission on the ground that the claim for compensation was exclusively within the province of the Workmen's Compensation Act of Maryland.
 
 
 6
 Harris, employed as a welder by The Boston Metals Company, died as the result of injuries received while engaged in dismantling a gun turret on the U.S.S. Guam. The Guam, a decommissioned battle cruiser, had been sold by the Navy to The Boston Metals Company by a contract which provided that the vessel should be broken down for scrap. The contract further provided that certain equipment should be removed and returned to the Navy, and the ship could not be remodeled or remade into another type of vessel.
 
 
 7
 For the purpose of carrying out the scrapping operations, the Guam was towed by tugs from Bayonne, New Jersey, to Baltimore, and was deliberately run aground alongside the main pier of Boston Metals in the Patapsco River. At the time of sale and continuously thereafter, the engines of the Guam were disconnected and inoperable and the propellers had been secured. Harris received his fatal injuries shortly after dismantling operations had commenced.
 
 
 8
 Section 2(4)[1] of the Act provides that 'The term 'employer' means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any dry dock.)' Section 3(a)[2] provides that 'Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law.'
 
 
 9
 The questions incident to the permissive scope and jurisdictional limits of the states and the federal government with respect to the compensation coverage of amphibious workers have plagued the courts since the landmark case of Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1916), which recognized the constitutional restrictions[3] upon the power of the states in this field. While the Longshoremen's Act was designed to ameliorate the situation of the employees by providing for federal compensation in those areas which the Court had held to be beyond the reach of the states, the provisory language of Section 3(a) left the jurisdictional controversy unresolved since Congress thereby accepted the Jensen line of demarcation between state and federal jurisdiction. Parker v. Motor Boat Sales, 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184 (1941).
 
 
 10
 The continuing problem under the Act was recognized and stated in Davis v. Department of Labor, etc., 317 U.S. 249, at 253, 63 S.Ct. 225 at 227, 87 L.Ed. 246 (1942):
 
 
 11
 'Harbor workers and longshoremen employed 'in whole or in part upon the navigable waters' are clearly protected by this Federal Act; but employees such as decedent here, occupy that shadowy area within which, at some undefined and undefinable point, state laws can validly provide compensation. This Court has been unable to give any guiding, definite rule to determine the extent of state power in advance of litigation, and has held that the margins of state authority must 'be determined in view of surrounding circumstances as cases arise.' Baizley Iron Works v. Span, 281 U.S. 222, 230 (50 S.Ct. 306, 307, 74 L.Ed. 819). The determination of particular cases, of which there have been a great many, has become extremely difficult. It is fair to say that a number of cases can be cited both in behalf of and in opposition to recovery here.'
 
 
 12
 In that case the Court upheld an award of state compensation by the judicial expedient of recognizing a 'twilight zone' in which the state law might permissively operate despite the fact that federal jurisdiction would also have been appropriate had it been administratively asserted.
 
 
 13
 It would serve no useful purpose to review what Judge Soper characterized as 'the confusion that beclouds the welter of decisions on the subject,'[4] for in our opinion the decision of the Supreme Court in Calbeck v. Travelers Insurance Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1961), is dispositive of the case at hand. There the Court upheld a federal award to an employee who at the time of his injury was engaged in the work of completing construction of a vessel on navigable waters. The Fifth Circuit had recognized what it assumed to be an accepted distinction between an employee engaged in repair work on a vessel which would fall within the federal statute and one engaged in construction of a vessel which would be covered by state compensation law. In reversing the Court of Appeals, the Court stated, 370 U.S. at 116, 82 S.Ct. at 1198, 8 L.Ed.2d 368:
 
 
 14
 'The Court of Appeals' interpretation of 3(a) would, if correct, have the effect of excepting from the Act's coverage not only the injuries suffered by employees while engaged in ship construction but also any other injuries-- even though incurred on navigable waters and so within the reach of Congress-- for which a state law could, constitutionally, provide compensation. But the Court of Appeals' interpretation is incorrect. The history of the Act, and of 3(a) in particular, contravenes it; and our decisions construing 3(a) have rejected it. Our conclusion is that Congress invoked its constitutional power so as to provide compensation for all injuries sustained by employees on navigable waters whether or not a particular injury might also have been within the constitutional reach of a state workmen's compensation law.'At the Circuit level in Calbeck the Court observed: 'We know by now that nothing written in this field is the last word. All it can be is 'the latest word."[5] In any event, since Harris received his injuries on navigable waters, we agree with the District Judge that Calbeck is controlling in this case.
 
 
 15
 Affirmed.
 
 
 
 [1]
 33 U.S.C.A. 902(4)
 
 
 [2]
 33 U.S.C.A. 903(a)
 3 U.S.Const. art. III, 2.
 
 
 [4]
 Travelers Ins. Co. v. McManigal, 139 F.2d 949, 951 (4th Cir. 1944)
 
 
 [5]
 Travelers Insurance Company v. Calbeck, 293 F.2d 52, 60 (5th Cir. 1961)