**WALTER TANTZEN, INC., and Insurance Company of North America, Petitioners,**

v.

**No. 949, Docket 79–4034.**

United States Court of Appeals, Second Circuit.

Argued April 30, 1979.

Decided June 29, 1979.

Joseph F. Manes, New York City, for petitioners-appellants.

Saul C. Downes, Rowen, Downes, Cascione & Chechanover, New York City, for respondent-appellee.

Carin Ann Clauss, Laurie M. Streeter, Mary A. Sheehan, U. S. Dept. of Labor, Washington, D. C., for party in interest.

Before GURFEIN and MESKILL, Circuit Judges, and WYZANSKI, Senior District Judge.*

WYZANSKI, Senior District Judge:

An employer and its insurer petition us to review the December 29, 1978 order of the Benefits Review Board, [BRB], United States Department of Labor affirming the order of the administrative law judge [ALJ] awarding compensation to Thomas Shaughnessy [hereinafter "claimant"] pursuant to the Longshoremen's and Harbor Workers' Compensation Act. 44 Stat. 1424; 86 Stat. 1251. 33 U.S.C. §§ 901–950 (1976) [LHWCA].

The petition assigns no specific error. (App. 1a). Petitioners' brief (p. 2), reciting that "the sole question presented is whether the claimant's injury . . . meets the jurisdictional requirements (status) of the Act," discusses only whether plaintiff was an "employee" within § 2(3) of the LHWCA, 33 U.S.C. § 902(3).[1] The employee question is also the only issue discussed by respondents' briefs. However, as will appear, we are of the opinion that we can-

---

* Of the District of Massachusetts, sitting by designation.

1. The relevant statutory section defining "employee," with italics indicating the material added to the original statute by 1972 amendments, 86 Stat. 1251, 33 U.S.C. § 902(3) (1970 ed., Supp. V) provides:

The term 'employee' *means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker, but such term* does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net.

not avoid another question—whether the respondent Walter Tantzen, Inc. was an "employer" within § 2(4) of LHWCA, 33 U.S.C. § 902(4).[2]

■ The ALJ made the following brief findings[3] as to the nature of the employer's business and of the claimant's work:

Employer was engaged in the business of weighing, sampling, and inspection of various imported commodities, including rubber, the material being handled by Claimant on October 21, 1974. Employer is hired by the importing dealers or their agents. The particular material being handled is unloaded from the ship by longshoremen and placed inside the pier. From that point Employer's personnel move the commodity in position to be weighed, after which the bale is opened by means of pry bars and a cutting instrument to be inspected. The container is reclosed by Employer's men, and then the commodity is moved by longshoremen to its ultimate destination to be accepted by the consignee. Employer's main functions are weighing, reconditioning, and sampling the commodity.

On the basis of his limited findings the ALJ stated that:

I find and conclude that Employer is engaged [sic] in maritime employment, and that at the time of his injury Claimant was doing [sic] likewise. It is clear that the weighing, sampling, and reconditioning of the cargo prior to delivery to the consignee is [sic] an integral and essential part of the process of unloading and movement of the commodity to the point where it is turned over to the consignee.

Accordingly, the ALJ entered a compensation order for claimant.

Upon appeal by the employer and its insurer, a majority of three members of the BRB concluded that the claimant was "engaged in longshoring operations" within the meaning of § 2(3) which was a "type of maritime employment within the meaning of § 2(3) of the Act" (App. 17a. Compare App. 15a) and, therefore, the BRB entered its December 29, 1978 order affirming the ALJ's order.

We do not find it necessary on this inadequate record[4] to decide whether Shaugh-

2. "Employer" was defined in 33 U.S.C. § 902(4):

The term 'employer' means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States [including any dry dock].

3. We deprecate the course followed by the BRB in supplementing the ALJ's findings with its own findings, especially on contested matters. Congress provided that "the findings of fact [by the ALJ] in the decision under review by the [Benefits Review] Board shall be conclusive if supported by substantial evidence in the record considered as a whole." § 21(b)(3) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 921(b)(3) (Supp. III, 1973). *Presley v. Tinsley Maintenance Service*, 529 F.2d 433, 436 (5th Cir. 1976); *Potenza v. United Terminals*, 524 F.2d 1136, 1137 (2nd Cir. 1975). If additional findings are necessary the BRB may "remand a case to the administrative law judge" to make additional findings. § 21(b)(4) of the LHWCA; 33 U.S.C. § 921(b)(4). Except with respect to uncontested matters, the BRB is not entitled to make its own findings of fact, nor are we.

4. The inadequate record makes it difficult, if not impossible, to know what duties longshore-

men customarily perform. We repeat the suggestion of Judge Friendly in *Pittston Stevedoring Corp. v. Dellaventura*, 544 F.2d 35, 47 (2nd Cir. 1976), approved on appeal by the Supreme Court, *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 272–273, note 34, 97 S.Ct. 2348, 53 L.Ed.2d 320, that the BRB prepare a study of what work longshoremen perform. We, apparently like Judge Friendly and Mr. Justice Marshall, would regard it as appropriate for the BRB, even though it is not a fact-finding body (see 33 U.S.C. § 21(b)(3)) and has only review functions, to use such a study in later reviews of orders of ALJ's. This would amount to an exercise of judicial notice with respect to facts "either generally known," or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." This would be in accordance with Fed.R.Evidence 201(a), which, although not controlling BRB or other tribunals acting in an appellate capacity, as is evident from Fed.R.Evidence 1101, nonetheless sets a standard appropriate for an appellate tribunal which contemplates taking judicial notice of any matter. *United States v. Casson*, 140 U.S. App.D.C. 141, 148, 434 F.2d 415, 422 (1970).

nessy was indeed "engaged in longshoring operations."[5]

■ An examination of the record reveals no evidence that Shaughnessy or any other employee of Tantzen was ever upon actual, as distinguished from statutorily defined, navigable waters of the United States (hereinafter sometimes called "actual water"). Nor do either the ALJ or the BRB say that Shaughnessy or any other employee of Tantzen was on actual water. What they do say or imply is that the fact that Shaughnessy was engaged in longshoring operations means that he was in "maritime employment" within the meaning of both § 2(3) and § 2(4) and that it follows that Tantzen was an employer within § 2(4). In our opinion, this reasoning involves a *nonsequitur*, a misconstruction of § 2(3), an incorrect interpretation of the term "maritime employment" as used in both § 2(3) and § 2(4), a misapplication of the cases holding that once it has been determined that a claimant is engaged in "maritime employment" it follows that his employer is an employer within § 2(4), and a result squarely contrary to a declared Congressional purpose.

■ In *Fusco et al. v. Perini et al.,* 601 F.2d 659 (2nd Cir. 1979) we explained that, as used in § 2(3), the phrase a "person engaged in maritime employment" is to be read geographically as meaning a person engaged in employment upon actual water. When § 2(3) defines "employee" as "any person engaged in maritime employment, including any longshoreman," § 2(3) uses the word "including" inexactly; as there used "including" means "as well as." § 2(3) does not say, what obviously is not the case, that every longshoreman is engaged in employment upon actual water. Hence the *mere* fact that employment is longshoring operations is a type of employment within § 2(3) does *not* make it a type of "maritime employment" as those two words are used in § 2(3).

Nor is employment in longshoring operations on land "maritime employment" as that term is used in § 2(4). As *Fusco v. Perini, supra,* details at length, and as *Calbeck v. Travelers Insurance Co.,* 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962) finally settled, the term "maritime employment" as used in § 2(4) means employment seaward of the line drawn by *Southern Pacific Co. v. Jensen,* 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917). There is no showing that Shaughnessy or any other Tantzen employee ever spent any part of any working day seaward of the *Jensen* line.

5. On the record as it now stands we cannot tell whether Shaughnessy's case is distinguishable from Blundo's case decided in *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977). Blundo in opening containers, checking the contents, stripping from the containers the cargo, marking the separate shipments destined for different consignees, and placing those shipments in a bonded warehouse was performing in a new setting work which was the *functional equivalent* of what longshoremen had previously done. It was for that reason that the Court held that Blundo was engaged in longshoring operations. *Ibid.,* pp. 270–271, 97 S.Ct. 2348. Until we know more about what longshoremen customarily do we cannot tell whether there is a similar equivalency with respect to Shaughnessy's duties in weighing bales which belong to an individual consignee, opening them, inspecting them, reconditioning their contents, and reclosing them. Obviously, what Shaughnessy does is directed at the weighing of a particular consignee's shipment and the inspection and reconditioning of its contents, and we are uninformed as to what longshoremen do with respect to individual shipments.

Moreover, the present findings of the ALJ do not show clearly whether after Shaughnessy has finished his inspection he, in effect like a switchman, directs a gang of longshoremen whether to take the bales to the consignee's truck or to take them to a storage warehouse.

In pointing to these *lacunae,* we have not indicated whether we agree with Shaughnessy's contention and the BRB's view that the word "engaged" in the phrase "engaged in longshoring operations" means merely "directly involved." See *Brady-Hamilton Stevedore Co. v. Herron,* 568 F.2d 137 (9th Cir. 1978); *Texports Stevedore Co. v. Winchester,* 554 F.2d 245, 247 (5th Cir.), *second pet. for rehearing on other grounds granted,* 569 F.2d 428 (1978); *J. A. McCarthy, Inc. v. Bradshaw,* 547 F.2d 1161 (3d Cir. 1977), *vacated and remanded,* 433 U.S. 905, 97 S.Ct. 2967, 53 L.Ed.2d 1088 (1977), *adhered to on reconsideration,* 564 F.2d 89 (3d Cir. 1977).

The cases to which the BRB refers, such as *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 97 S.Ct. 2348 (1977) and *Handcor Inc. v. Director*, 568 F.2d 143, 144 (9th Cir. 1978), and cases like *I.T.O. Corp. of Baltimore v. Benefits Review Board*, 529 F.2d 1080, 1083 (4th Cir. 1975), *modified en banc on other grounds*, 542 F.2d 903 (4th Cir. 1976), *vacated and remanded sub nom. Adkins v. I.T.O. Corp. of Baltimore*, 433 U.S. 904, 97 S.Ct. 2967, 53 L.Ed.2d 1088 (1977), *rev'd on remand on other grounds*, 563 F.2d 646 (1977), as well as texts such as 4 Larson, Workmen's Compensation Law (1979) § 89.27 p. 16–178, and Gilmore and Black, The Law of Admiralty (2d ed., 1975), p. 429, lines 14–16, which indicate that once the claimant's status as an "employee" is established the employer automatically becomes an "employer" failed to consider the problem presented by the instant case—where a worker claims the status of a statutory § 2(3) "employee" because he is a longshoreman but is not himself in maritime employment. What those authorities say about the claimant's proving that his employer is a statutory § 2(4) employer by proving that he is a § 2(3) employee is true if and only if the employee also proves that he is employed over actual water.

That the foregoing statement is sound is convincingly shown by the Congressional Committee Reports which accompanied the 1972 amendments to the 1927 LHWCA. See S.Rep.No.92–1125, 92 Cong. 2 Sess. (1972) and H.R.Rep.No.92–1441, U.S.Code Cong. & Admin.News 1972, p. 4698. The Committees were explicit in their intention to exclude from LHWCA liability any employer who had no employees on actual water:

> Likewise the Committee has no intention of extending coverage under the Act to individuals who are not employed by a person who is an employer, i. e., a person at least some of whose employees are engaged, in whole or in part, in some form of maritime employment. Thus, an individual employed by a person none of whose employees work, in whole or in part, on navigable waters, is not covered even if injured on a pier adjoining navigable waters. S.Rep. 13; H.R.Rep. 11.

Although we must set aside the BRB's December 29, 1978 order because there is no proof that the employer Tantzen is subject to the LHWCA, we, in remanding the case, leave the BRB free in its turn to remand the case to an ALJ to hear any evidence that shows that in fact Shaughnessy or any other Tantzen employee was employed in maritime employment in the sense of employment upon actual water. Such a re-opening of the case may seem fair in view of a misunderstanding so generally shared in this case by all, and not even exposed in the briefs or at the oral argument.

If the case is re-opened it might be appropriate to take further evidence and to make more specific findings as to (1) Shaughnessy's own duties, (2) what, if any, duties longshoremen perform in connection with weighing, opening, inspecting, and reconditioning the contents of bales or other packages of individual consignees, and (3) what form of report, if any, a scaleman like Shaughnessy makes to the longshoremen who pick up bales when the scaleman has finished his work.

*Petition granted.*

*The December 29, 1978 Benefits Review Board order is set aside and the case is remanded to the Benefits Review Board for further proceedings not inconsistent with this opinion.*