Sunny G. WARD, Widow of John D. Ward, Deceased, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, and Zapata-Haynie Corporation, et al., Respondents.

No. 81–4233.

United States Court of Appeals, Fifth Circuit.

Aug. 23, 1982.

**45.** *See Fragumar Corp. v. Dunlap*, 685 F.2d 127 (5th Cir. 1981) (discussing difference between jurisdiction and merits).

John L. Hunter, David O. McCormick, Pascagoula, Miss., for petitioner.

Joshua T. Gillelan, II, U.S. Dept. of Labor, Washington, D.C., Al Hopkins, Gulfport, Miss., for Zapata-Haynie.

Benefits Review Bd., U.S. Dept. of Labor, Washington, D.C., for other interested parties.

Before RUBIN, REAVLEY and TATE, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Benefits are claimed under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 (1976) (LHWCA or Act) by the dependents of an airplane pilot engaged in spotting fish who died when his aircraft crashed into the waters of the Mississippi Sound, two miles off Mississippi's Gulf Coast. A panel of the Benefits Review Board denied the claim, with one judge dissenting. *Ward v. Zapata-Haynie Corp.*, No. 80–287 (Ben.Rev.Bd. June 11, 1981).[1] Concluding that the pilot was engaged in maritime employment, died in a maritime situs, and was not excluded from LHWCA coverage as a member of the crew of a vessel, we reverse and remand.

As part of his regular employment, John D. Ward flew a Cessna 172 airplane from an airport in Mississippi over the Gulf in order to locate schools of menhaden so that he could direct fishing boats to them. Once he located a school, Ward communicated with the fishing vessels by radio, instructing their crews how to locate the school and how to pull, spread, and close their nets in order to catch the fish. Ward was paid a weekly wage and a bonus based on the number of fish caught.

The LHWCA provides for compensation to workers killed or injured during the course of maritime employment. For 45 years after its enactment in 1927, the Act's test for coverage was simply whether the employee suffered injury on navigable waters. *See Calbeck v. Travelers Insurance Co.*, 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1972); *Boudreaux v. American Workover, Inc.*, 680 F.2d 1034, 1037 (5th Cir. 1982) (en banc). In 1972, Congress amended the LHWCA to add a status test to this traditional situs test in determining coverage. The status test requires that workers be engaged in "maritime employment," LHWCA § 3(a), 33 U.S.C. § 903(a), and the situs test now requires that injury occur "upon the navigable waters of the United States." *Id. See generally Boudreaux*, 680 F.2d at 1037–38.[2] The Act excludes from

---

1. Administrative Appeals Judge Kalaris concluded that Ward was not covered because fishermen, as members of the crew of a vessel, are not covered by the LHWCA. 33 U.S.C. § 902(3) (1976). Judge Kalaris reasoned that removing the spotter from the crow's-nest of the vessel to an airplane should not change the status of the employee for LHWCA purposes.

Chief Administrative Appeals Judge Smith agreed that Ward was not covered, reasoning that Ward did not fall within the occupational classifications of Section 902(3). Administrative Appeals Judge Miller dissented, stating that, because Ward was injured over navigable waters and would, therefore, have been covered prior to the 1972 amendments, he should still be covered. Judge Miller also concluded that Ward was engaged in maritime employment even under his colleagues' test.

2. The Act also covers accidents occurring in areas adjoining navigable waters. 33 U.S.C. § 903(a).

coverage "a master or member of a crew of any vessel . . . ." 33 U.S.C. § 902(3).

## I.

We recently held in *Boudreaux v. American Workover, Inc.*, 680 F.2d 1034 (5th Cir. 1982) (en banc), that a person required to work on navigable waters and who would consequently have been covered by the pre-1972 LHWCA is still covered. *Id.* at 1038. The employee in *Boudreaux*, who was engaged in moving wireline equipment on a movable drilling barge, would have been considered to be engaged in maritime employment for LHWCA purposes before the Act's revision because the accident causing his death occurred *over* navigable waters. We concluded that Congress did not intend to remove such persons from LHWCA coverage. *Id.* Thus, because of that congressional intent, we held that employees injured on water during the course of their employment met both the situs and status tests. *Id.* at 1039, 1045.[3]

The statute requires that *"the injury"* occur "upon the navigable waters of the United States." 33 U.S.C. § 903(a). The employer argues that Ward was not covered because he was never "upon" water. He was certainly and literally on, then in, water at the moment of the crash. But we are not content to rest on this scrupulous reading of the statute; the Act has consistently been given a liberal construction in view of its remedial purpose. *Boudreaux*, 686 F.2d at 1038. Employees who, like Boudreaux, were "on" vessels when injured or killed have always been held to be on the navigable waters. *See, e.g., Calbeck*, 370 U.S. at 115 n.2, 82 S.Ct. at 1197 n.2; *Pippen v. Shell Oil Co.*, 661 F.2d 378, 380 (5th Cir. 1981); *Gilliam v. Wiley N. Jackson Co.*, 659 F.2d 54, 55 (5th Cir. 1981): *see also Nalco*

*Chemical Corp. v. Shea*, 419 F.2d 572, 574 (5th Cir. 1969) (per curiam) (pilot salesman who did much of his work over water, and who was killed when his plane crashed into navigable waters, held covered by the Act). An employee who dies when an aircraft strikes the water and who has been regularly required to fly over the water in the course of his employment, using an airplane merely to do what vessels once did, and could still do, should likewise be covered.

The employer also contends that Ward did not meet the "status" requirement because his employment was not of the maritime character contemplated by section 2(3).[4] *Boudreaux* decides that issue: an employee injured in the regular course of his employment on the navigable waters of the United States automatically meets both the status and situs tests. 680 F.2d at 1045. In *P. C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225, (1979), the Court declared that we should look to the nature of the activity to which the worker is assigned in determining whether employment is maritime. *Id.* at 82–83, 100 S.Ct. at 337, 62 L.Ed.2d at 236. *See Trotti & Thompson v. Crawford*, 631 F.2d 1214, 1221 n.16 (5th Cir. 1980) ("Clearly we must look to the purpose of the work, not solely to the particular skills used."). The *Pfeiffer* Court explicitly stated: "we understand the word 'including' to indicate that 'longshoring operations' comprise a part of the *larger group of activities that make up maritime employment.*" 444 U.S. at 72 n.7, 100 S.Ct. at 334 n.7, 62 L.Ed.2d at 233 n.7 (emphasis added). Adhering to that suggestion and attempting to fulfill the broad remedial purposes of the Act, we hold that its coverage is not limited to the occupations specifically listed.[5]

---

**3.** We reserved only the question, not here raised, whether coverage extended to a person whose employment brought him "transiently or fortuitously" on the waters. *See Boudreaux*, 680 F.2d at 1039.

**4.** "The term 'employee' means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker in-

cluding a ship repairman, shipbuilder, and shipbreaker . . . ." 33 U.S.C. § 902(3).

**5.** Indeed, the statute states that the list of covered employees "includes" the enumerated occupations. It does not *limit* coverage to those occupations. *See supra* note 4. As the Senate Report states: "The definition specifically includes any longshoreman or other person engaged in longshoring operations, any harbor-

Before the advent of the aircraft, the fish-spotting function was performed by a member of the vessel's crew. Indeed, during inclement weather, spotting is still done from the ship. Thus, even if we were to apply the stricter definition of maritime employment, requiring a realistically significant relationship to maritime activities involving navigation and commerce on navigable waters, Ward would be covered. *See Weyerhauser Corp. v. Gilmore,* 528 F.2d 957 (9th Cir.), *cert. denied,* 429 U.S. 868, 97 S.Ct. 179, 50 L.Ed.2d 148 (1976); *see also Boudreaux,* 680 F.2d at 1056 (Gee, J., dissenting); *cf. Ledoux v. Petroleum Helicopters, Inc.,* 609 F.2d 824 (5th Cir. 1980) (per curiam) (crash of helicopter while transporting personnel and supplies to offshore drilling structure bears significant relationship to traditional maritime activity, conferring admiralty jurisdiction).[6]

The employer argues that our decision in *Thibodaux v. Atlantic Richfield Co.,* 580 F.2d 841 (5th Cir. 1978), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2820, 61 L.Ed.2d 274 (1979), requires us to deny coverage. In *Thibodaux,* we stated that an employee could satisfy the status test in two ways: he might, at the time of injury, be engaged in an *activity* properly classified as maritime employment, or he might be engaged in an *occupation* considered maritime employment. 580 F.2d at 844. We concluded in *Thibodaux* that the employee failed to meet the "occupation" test because he was an oilfield worker and maintenance man and failed to meet the "activity" test because, at the time of his injury, he was merely being transported to his land-based job.

The employer would have us hold that the list of occupations in section 902(3) is exclusive, and that, because Ward was not engaged in longshoring or shipbuilding or repair at the time of his death, he cannot be covered by the LHWCA. We have rejected that construction of the statute earlier in this opinion. *See supra* note 5 and accompanying text. *Accord Miller v. Central Dispatch, Inc.,* 673 F.2d 773, 781 (5th Cir. 1982) (courier/driver for maritime service agency is covered under *Thibodaux* test). Because Ward was engaged in a maritime occupation and was performing that occupation at the "moment of injury," *see Miller,* 673 F.2d at 781, he met *both* prongs of the *Thibodaux* test.[7]

## II.

The employer next argues that, because Ward was a crew member, he was excluded from LHWCA coverage. When Congress passed the original LHWCA in 1927, it did not cover the "master or member of a crew" of any vessel because seamen were already accorded a general maritime law remedy for unseaworthiness of a vessel and a statutory remedy for negligence under the Jones Act. The seamen's unions preferred to retain these remedies. *See South Chicago Coal & Dock Company v. Bassett,* 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940). In the debate on the floor of the House of Representatives preceding passage of the 1927 Act, the term "member of a crew" was explained as embracing fishermen as well as seaman.[8] The "crew mem-

worker, including a ship repairman, shipbuilder or ship breaker. *It does not exclude other employees traditionally covered ....*" S.Rep.No. 1125, 92d Cong., 2d Sess. 16 (1972) (emphasis added).

6. In cases brought under the Jones Act, a liberal interpretation of coverage is consonant with the intent of Congress. *Warner v. Goltra,* 293 U.S. 155, 156, 55 S.Ct. 46, 79 L.Ed. 254 (1934). We need not now decide whether in the event of a direct conflict between a liberal interpretation of the Jones Act and a liberal interpretation of the LHWCA, which would prevail.

7. Furthermore, as we pointed out in *Boudreaux, Thibodaux* presented a materially different factual situation. The plaintiff's claim under the LHWCA in *Thibodaux* had been consolidated with actions under the Jones Act and the general maritime law. In fact, the claimant had already negotiated a settlement of the action against one of the parties under the Jones Act for $40,000. Because of those factors, the LHWCA neither required nor was given in *Thibodaux* the liberal construction usually accorded it. *See Boudreaux,* 680 F.2d at 1038, 1048 & n.29.

8. 68 Cong.Rec. 5403 (1927).

ber" exclusion was left when Congress passed the 1972 amendments to the LHWCA.

In *Smith v. Pan Air Corp.*, 684 F.2d 1102 (5th Cir. 1982), decided today, we hold that a plane is not a vessel under the Jones Act. Because the statutes employ the selfsame language, and dovetail by design, we conclude that the pilot who is not entitled to Jones Act coverage is not excluded from LHWCA benefits. The reference to "fishermen" in the House debate does not strain this conclusion. The term was, in 1927, evidently taken to mean those who fished from conventional vessels, not all who might one day perform the functions then performed by look-outs stationed on a ship's mast.

It is suggested that Congress, in amending the Act in 1972, decided to accommodate it to "the advent of modern cargo-handling techniques." *Northeast Marine Terminal Co., Inc. v. Caputo*, 432 U.S. 249, 269–70, 97 S.Ct. 2348, 2360, 53 L.Ed.2d 320, 336 (1977) (quoting S.Rep.No. 92–1125, at 13; H.R.Rep.No. 92–1441, at 10, *reprinted in* 1972 U.S.Code Cong. & Ad.News 4698, 4707). Congress did adapt the Act to meet industrial change. It may do so again. However, statutory alteration is its province, not ours. While the language of a statute is not frozen in the mold of the year of its adoption, and courts should construe statutory words flexibly with an eye to legislative purpose, we are given no commission to determine what is socially useful. Those who serve on vessels were given a set of remedies because Congress considered it to be desirable. It does not follow that we should determine that either pilots, their employers, or society would be better served by classifying even pilots who spot fish as Jones Act seamen.

### III.

We hold that, at the time of his death, Ward was engaged in maritime employment over navigable waters, meeting both the status and situs tests for LHWCA coverage. Accordingly, the judgment of the Benefits Review Board is REVERSED and the case is REMANDED for proceedings consistent with this opinion.