703 F.2d 176
 1984 A.M.C. 2274
 HERB'S WELDING and United States Fidelity & Guaranty
Company, Petitioners,
v.
Robert H. GRAY, Jr. and The Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondents.
 No. 82-4147.
 United States Court of Appeals,
Fifth Circuit.
 April 18, 1983.
Rehearing and Rehearing En Banc Denied Aug. 8, 1983.
 
 John F. Simon, Alexandria, La., for petitioners.
 Joshua T. Gillelan, II, James J. Brady, T. Gerald Henderson, Alexandria, La., for respondents.
 Petition for Review of a Final Order of the Benefits Review Board.
 Before CLARK, Chief Judge, THORNBERRY and REAVLEY, Circuit Judges.
 CLARK, Chief Judge:
 
 
 1
 Herb's Welding, a company which provides welding services to oil field rigs, appeals from a Benefits Review Board award of compensation to Robert H. Gray under the Longshoremen's and Harbor Workers' Compensation Act. We affirm.
 
 
 2
 Gray, a welder with Herb's Welding, was assigned to the Bay Marchand oil and gas field which is located both in Louisiana territorial waters and over the Outer Continental Shelf. There Gray helped repair and maintain oil and gas lines and fixed platform production structures.
 
 
 3
 When he was on duty, Gray lived, ate and slept on a structure situated in Louisiana waters, and he worked on platforms located in both Louisiana and Outer Continental Shelf waters. He was transported to his daily work sites by boat or helicopter. On July 11, 1975, Gray was welding a two-inch gas line on a platform in the navigable waters of Louisiana when an explosion occurred. Gray, in trying to run from the area, twisted his knee.
 
 
 4
 The insurance company paid Gray temporary total disability, permanent partial disability and related medical expenses under Louisiana worker's compensation. The carrier refused to pay benefits under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA). An administrative law judge refused the LHWCA claim finding that Gray was not involved in maritime employment. The Benefits Review Board reversed the denial of benefits on the ground that Gray was covered under the Outer Continental Shelf Lands Act and remanded the case for entry of an award. The administrative law judge awarded $10,000 and deducted the $3,000 already awarded under the state law.
 
 
 5
 The parties have devoted a considerable amount of their appellate effort to discussing whether the Outer Continental Shelf Lands Act applies to this case. We need not reach this issue since we find that Gray qualifies for coverage under the LHWCA.
 
 
 6
 At the threshold, we must decide whether the LHWCA can reach an offshore oil field worker injured upon a fixed platform located in Louisiana waters. In Rodrigue v. Aetna Casualty and Surety Co., 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), the Supreme Court declared that fixed offshore platforms are artificial islands and therefore outside traditional maritime jurisdiction. Id. at 365-66, 89 S.Ct. at 1842. The Rodrigue Court determined that the Death on the High Seas Act, 46 U.S.C. Sec. 761, did not apply to wrongful death actions brought by the families of two men who were killed upon fixed platforms on the Outer Continental Shelf off the coast of Louisiana. Justice White wrote that traditional admiralty jurisdiction did not extend to these platforms. He likened them to wharves located above navigable waters. Id. at 366, 89 S.Ct. at 1842.
 
 
 7
 In 1972, three years after Rodrigue was written, Congress amended the Longshoremen's and Harbor Workers' Compensation Act to extend the area of its coverage. Prior to the amendment, the Act required a covered injury to occur "upon navigable waters." 33 U.S.C. Sec. 903(a) (1970). The amendment added coverage for accidents occurring upon "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel." 33 U.S.C. Sec. 903(a) (1975). At the time Rodrigue was written, wharf-like fixed platforms were outside the coverage of the Act. Today, accidents upon wharves over navigable waters are within the statutory jurisdiction of the LHWCA. It would be incongruous, therefore, not to extend LHWCA jurisdiction to the fixed platform in this case. Such platforms are essential to and customarily used in the loading and unloading of crews, supplies and oil. Their function is precisely that of wharves over navigable waters. The jurisprudential concept of an island carries with it the concept of the island's shore and the function of the structure as a wharf projects from that "land."
 
 
 8
 For the purposes of the LHWCA, it makes no difference that the navigable waters involved are also state territorial waters. Boudreaux v. American Workover, Inc., 680 F.2d 1034, 1035-36 (5th Cir.1982) (en banc), cert. denied, --- U.S. ----, 103 S.Ct. 815, 74 L.Ed.2d 1013 (1983). Workers injured on movable drilling barges are covered under the LHWCA whether the vessel on which they work is located in territorial or Outer Continental Shelf waters. Id. Workers injured on fixed platforms located upon the Outer Continental Shelf receive LHWCA coverage through the Outer Continental Shelf Lands Act.[1] Workers en route to fixed platforms are granted coverage. Nalco Chemical Corp. v. Shea, 419 F.2d 572 (5th Cir.1969). To bar from the Act's coverage all fixed-platform workers in territorial waters would create a curious hole in LHWCA coverage.[2] We decline to do it.
 
 
 9
 The decision that fixed-platform workers in territorial waters are not excluded from coverage because of their unique workplace does not end our inquiry in Gray's case. We must still determine whether he is within the Act's protection. The Act's situs and status tests must be satisfied. Compensation is payable under the LHWCA only if the disability results from "an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, ... or other adjoining area customarily used by an employer in loading, unloading, repairing or building a vessel)." 33 U.S.C. Sec. 903(a). The situs test in section 903(a) requires that the injury occur upon navigable waters or in an area adjoining navigable waters. The status test in section 902(3) requires that the worker be an employee which is defined as "any person engaged in maritime employment." 33 U.S.C. Sec. 902(3).
 
 
 10
 Gray's case is slightly different from those presented by our prior decisions in Boudreaux, or Ward v. Director, Office of Workers' Compensation Programs, 684 F.2d 1114 (5th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 815, 74 L.Ed.2d 1013 (1983), or the Supreme Court's recent pronouncement in Director, Office of Workers' Compensation Programs v. Perini, --- U.S. ----, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983). In Boudreaux, the worker was injured on a drilling barge which was located upon navigable waters. Boudreaux, 680 F.2d at 1035-36. In Ward, the decedent was a pilot who "spotted fish" from on high. He was killed when his plane crashed into navigable waters. Ward, 684 F.2d at 1115. In Perini, the injured worker was standing on a cargo barge which was upon navigable waters. Perini, 103 S.Ct. at 638. These workers were covered because even before the 1972 amendments they were within the Act's reach to those employed on actual navigable waters. Gray on the other hand was injured while working on a fixed platform which Rodrigue requires be treated as an island. By its function the platform is a wharf. By its location, extending from an island it adjoins navigable waters. Therefore, the situs of Gray's injury was literally within the expanded shoreside coverage of the Act.
 
 
 11
 The status test was also added to the Act by the 1972 amendments. The intent of Congress in making these amendments was to expand the shoreside reach of the Act. Boudreaux v. American Workover, Inc., supra. The status test was added to identify those workers who would be covered within this new area. Id. The status test does not require a rigorous analysis for water-based workers injured upon navigable waters. Their coverage under the Act is nearly automatic. Id. at 1039; Ward, 684 F.2d at 1116. Deciding whether Gray was an employee of an employer engaged in maritime employment will determine whether he qualifies for coverage.
 
 
 12
 Maritime employment turns not on geography, but on the maritime nature of the work. P.C. Pfeiffer Co. v. Ford, 444 U.S. 69, 73-83, 100 S.Ct. 328, 332-37, 62 L.Ed.2d 225 (1979). The purpose of the work is the central inquiry, not the particular skills used by the worker. Trotti & Thompson v. Crawford, 631 F.2d 1214, 1221 n. 16 (5th Cir.1980). The test to be used in this analysis is whether the work bore "a realistically significant relationship to traditional maritime activity." Mississippi Coast Marine, Inc. v. Bosarge, 637 F.2d 994, 998 (5th Cir.1981). We must determine then whether Gray's work had a realistically significant relationship to traditional maritime activity involving navigation and commerce on navigable waters. Odom Construction Co. v. United States Department of Labor, 622 F.2d 110, 113 (5th Cir.1980), cert. denied, 450 U.S. 966, 101 S.Ct. 1482, 67 L.Ed.2d 614 (1981).
 
 
 13
 Perini established that the use of this test is not necessary for water-based workers injured upon navigable waters. It reversed the United States Court of Appeals for the Second Circuit which applied the "realistically significant relationship" test to water-based workers. 103 S.Ct. at 639. Perini held that application of the status and situs tests must not be used to withdraw LHWCA coverage from workers, like Boudreaux, who were covered prior to the 1972 amendments. The fact that they were injured upon actual navigable waters is enough. This reasoning does not apply here. The "realistically significant relationship" test remains viable for workers injured upon land, be it natural or artificial. Gray is not within the group of workers traditionally covered prior to 1972. He was injured not upon navigable waters but on a wharf adjoining them.
 
 
 14
 Gray did welding and maintenance work on offshore platforms. At the time of his injury, he was welding gas lines. His work was necessary for the offshore drilling process in that gas line maintenance is vital to the drilling and removal of gas and oil. Offshore drilling--the discovery, recovery and sale of oil and natural gas from the sea bottom--is maritime commerce. Pippen v. Shell Oil Co., 661 F.2d 378, 384 (5th Cir.1981). Since Gray's work was a central part of that process, it obviously facilitated maritime commerce. Indeed, his work was "an integral part" of maritime commerce, "an essential and indispensable step" in the offshore drilling process. Hullinghorst Industries v. Carroll, 650 F.2d 750, 756 (5th Cir.1980), cert. denied, 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982). He was clearly employed in maritime employment and therefore was within the compensation coverage afforded by the LHWCA.
 
 
 15
 For the reasons stated the order of the Benefits Review Board is
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 The Outer Continental Shelf Lands Act provides, in relevant part:
 With respect to disability or death of an employee resulting from any injury occurring as the result of operations conducted on the Outer Continental Shelf for the purpose of exploring for, developing, removing, or transporting by pipeline the natural resources, or involving rights to the natural resources, of the subsoil and seabed of the Outer Continental Shelf, compensation shall be payable under the provisions of the Longshoremen's and Harbor Workers' Compensation Act.
 43 U.S.C. Sec. 1333(b).
 
 
 [2]
 This sort of checkered coverage would harken back to the days of "maritime-but-local" exceptions, Grant-Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321 (1922), which were abandoned in Davis v. Dept. of Labor, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942)
 Administrative law judges' decisions have found fixed platforms in territorial waters to be located upon navigable waters for the purposes of the LHWCA. Neal v. Wilson Wireline Services, 2 BRBS 88 (1975); Henning v. Vacco Wireline Services, 2 BRBS 87 (1975); Wiley v. Wilson Wireline Services, 2 BRBS 86 (1975). A commentator on this area has favored including workers on such structures within LHWCA coverage. Robertson, Injuries to Marine Petroleum Workers: A Plea for Radical Simplification, 55 Tex.L.Rev. 973 (1977). Robertson says that "the handful of post-1972 coverage determinations suggest that work on fixed platforms meets the new navigable waters criteria." Id. at 994. He notes that the Benefits Review Board has had some difficulty, however, with finding these workers to be in maritime employment. He criticizes this hesitation:
 [W]hile the work done by fixed-platform workers may have been "basically the same whether performed on land or on the offshore platform," the hazards certainly were not the same. All workers on drilling apparatus at sea are subject to hazards peculiar to the sea in addition to the entire range of dangers intrinsic to oilfield work. Men whose work involves the dangers incident to the movement of watercraft should continue to be classed as seamen. Others who are threatened by the dangers the ocean presents to a structure temporarily or permanently positioned on or in it should be classed as maritime workers. To exclude from the Longshoremen's Act workers on fixed-platforms within three miles from shore would produce an anomalous situation: All floating-rig workers would be entitled to maritime rights, either as seamen or as employees covered by the Longshoremen's Act; and workers on fixed platforms located beyond the three-mile line would be covered by the Longshoremen's Act by virtue of the Lands Act extension; but fixed-platform workers hurt within three miles from shore would be excluded from the domain of maritime remedies. Given the similarities in the hazards faced by all these workers, this distinction seems wholly unwarranted.
 Id. at 995-96.