[No. B100236. Second Dist., Div. Four. Oct. 7, 1997.]

CNA INSURANCE COMPANY, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, NAVIGATORS
INSURANCE COMPANY et al., Respondents.

**COUNSEL**

Gaitan, Lenker, Davis & Myers and John E. Lenker for Petitioner.

Thomas I. Hampton for Respondents.

## OPINION

HASTINGS, J.—In this petition for review of denial of a petition for reconsideration, we determine that the Workers' Compensation Appeals Board properly ordered an insurer to cover certain payments made to an injured worker.

## BACKGROUND

Long Beach Water Concessions bartender Cella Baker sustained injuries to her person when she proceeded down the gangway of her assigned vessel, Catalina King, and a surge of water from another arriving vessel caused the gangway and the City of Avalon's floating dock to move in different directions and Baker to fall onto the dock. Baker had been disembarking to order supplies, one of her responsibilities as an employee. Evidence indicated Baker spent between 80 and 99 percent of her working hours on board the vessels to which she was assigned.

Baker sought recompense for her injuries in several forums and in the following order: (1) an application for benefits pursuant to the Longshore and Harbor Workers' Compensation Act (LHWCA; 33 U.S.C. § 901 et seq.); (2) a civil action in Los Angeles Superior Court (No. NC004844) against Long Beach Water Concessions (Employer), the City of Avalon (which had refused her tort claim), and Crowley Marine Services/H.Tourist doing business as Catalina Cruises, citing both the Jones Act (46 U.S.C. Appen. § 688) and general maritime law; (3) an application for benefits pursuant to the Jones Act; and (4) an application for benefits pursuant to the California Workers' Compensation Act (Lab. Code, § 3200 et seq.).

Employer carried LHWCA and Jones Act insurance through real party in interest Navigators Insurance Company (Navigators), and state workers' compensation insurance through petitioner CNA Insurance Company (CNA). Settlement negotiations commenced in each forum. Baker's voluntary settlement conference statement in the civil case acknowledged she had applied for benefits in all of the forums and asserted she qualified to receive benefits in each. The document stated Baker was a Jones Act seaman. On April 13, 1994, the Los Angeles Superior Court approved a $55,000 "global" settlement, to which both Employer, through Navigators, and the City of Avalon contributed. The settlement agreement does not state that Baker is a Jones Act seaman and does not include a jurisdictional finding. On July 21, 1994, LHWCA personnel approved a $36,235 agreed settlement (33 U.S.C.

§ 908(i)).[1] The findings included only the following: that Baker had alleged injury, that Navigators insured Employer for LHWCA, that the parties had agreed "on the pertinent issues and desire to settle the claim," that the settlement amount "is commensurate with the claimant's disability," and that the agreement "was not secured under duress." There was no finding of jurisdiction. In each settlement agreement, Employer received credit for payments made. CNA was not a signatory to either agreement.

Baker did not present a proposed settlement agreement to the state workers' compensation judge (WCJ); she did accept certain state workers' compensation benefits.

Navigators requested contribution from CNA.[2] CNA refused. Navigators petitioned the WCJ for relief. CNA opposed the petition, asserting, inter alia, that Baker was a Jones Act seaman.

On December 20, 1995, the WCJ filed his order and opinion on decision, addressing issues relating to contribution, jurisdiction, and state workers' compensation coverage. The WCJ denied Navigator's request for contribution, holding that no settlement agreement had been presented for approval in the state workers' compensation forum and that Navigators lacked standing because it was not the workers' compensation insurance carrier. (Navigators does not here challenge this ruling.)

With respect to the issue of jurisdiction, the opinion on decision states in part: "The WCAB [Workers' Compensation Appeals Board] does have jurisdiction over any action taken by the Applicant relative to workers' compensation benefits and as far as any lien claimant that has provided services to the Applicant relative to her workers' compensation claim. [¶] It is also clear based upon the record and past action in this case that CNA has recognized that they are the duly responsible insurance carrier for any

---

[1]Section 908(i) of 33 United States Code reads as pertinent: "(1) Whenever the parties to any claim for compensation under this chapter, including survivors benefits, agree to a settlement, the deputy commissioner or administrative law judge shall approve the settlement within thirty days unless it is found to be inadequate or procured by duress. . . . No liability of any employer, carrier, or both for medical, disability, or death benefits shall be discharged unless the application for settlement is approved by the deputy commissioner or administrative law judge. . . . [¶] . . . [¶] (3) A settlement approved under this section shall discharge the liability of the employer or carrier, or both. Settlements may be agreed upon at any stage of the proceeding including after entry of a final compensation order."

[2]For example, Navigators represented: "Navigators paid compensation to Applicant at the higher Longshore rate of $277.26 per week for 55 3/7 weeks. However, the liability of CNA for TTD [temporary total disability] would be calculated at the lower maximum state rate (i.e., $224 per week). This would result in a total state TTD indemnity liability for CNA of $12,409.60 ($224 per week times 55 3/7 weeks equals $12,409.60)."

workers' compensation benefits. [¶] . . . It is well established that there may be concurrent jurisdiction on [LHWCA] and the [state] workers' compensation system. Issues as to concurrent jurisdiction between the Jones Act and State Workers' Compensation rights are not so clearly defined." Without further discussion, the WCJ approved state benefits Baker had received that totaled $6,622.08 and ordered CNA to negotiate or litigate the related liens.

CNA petitioned the WCJ for reconsideration. CNA reviewed evidence concerning Baker's employment and asserted she had consistently claimed seaman status for purposes of the Jones Act, arguing that under such circumstances federal maritime law must be her exclusive remedy.

The WCJ denied the petition, noting that CNA had answered Baker's application and raised affirmative defenses thereto, appeared at a mandatory settlement conference where it "admitted injury," appeared at a trial setting conference where it agreed to pay rehabilitation benefits, and successfully petitioned to vacate the minute order memorializing that agreement. The WCJ held that CNA's prior participation waived the jurisdiction issue.

As a second ground, the WCJ held that, although Baker's failure to seek WCAB approval of the "global" settlement reflected she had "abandoned her claim," the lien claimants were entitled to stand in her place. The WCJ characterized the case presented to him as one relating solely to the specific interests of the two insurance companies, noting that Baker had not appeared at the hearing. Thus, the WCJ concluded, "[t]he statement of facts provided by CNA is not binding on lien claimants' rights as no factual issues have been put into play by the Applicant or the lien claimants." The WCJ faulted CNA for failing to notice the lien claimants of the action before the WCAB and of its petition for reconsideration.

As a final ground for denial, the WCJ stated that CNA's petition for reconsideration was unverified.

The WCAB denied reconsideration based upon the report of the WCJ. CNA successfully petitioned this court for a writ of review to determine the lawfulness of the denial of reconsideration.

## DISCUSSION

Preliminarily, we agree that CNA's participation in the state forum did not waive the issue of subject matter jurisdiction. (Code Civ. Proc., § 430.80; *Barnick* v. *Longs Drug Stores, Inc.* (1988) 203 Cal.App.3d 377, 379-380 [250 Cal.Rptr. 10]; *Olmstead* v. *West* (1960) 177 Cal.App.2d 652, 654 [2 Cal.Rptr. 443].)

■ CNA's basic contention is that the Workers' Compensation Appeals Board does not have jurisdiction to award benefits to a worker who "has already been compensated under the Jones Act for alleged injuries arising from the same incident for which State Workers' Compensation is sought." Much of the briefing and argument by CNA and Navigators addresses the question of whether Baker is a Jones Act "seaman." For purposes of discussion, we shall assume, but not decide, that Baker did qualify as a seaman under the Jones Act. Even so, as we shall explain, public policy supports Baker's application for benefits in multiple forums, and the circumstances of this case trigger CNA coverage.

■ The United States Supreme Court noted the mutual exclusivity of certain federal workers' compensation recovery schemes in *Chandris, Inc.* v. *Latsis* (1995) 515 U.S. 347 [115 S.Ct. 2172, 132 L.Ed.2d 314]. ■ ■ ■ ■ The Jones Act provides in pertinent part: "Any *seaman* who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, . . ."[3] (46 U.S.C. Appen. § 688(a), italics added; *Chandris, Inc.* v. *Latsis, supra,* 515 U.S. at p. 351 [115 S.Ct. at pp. 2181-2182].) ■ The LHWCA provides compensation for injury to a "broad range of land-based maritime workers but . . . explicitly excludes from its coverage '*a master or member of a crew of any vessel.*' 44 Stat. (part 2) 1424, as amended, 33 U.S.C. § 902(3)(G)." (*Id.* at p. 355 [115 S.Ct. at p. 2183], italics added.) " '[T]he Jones Act and the LHWCA are mutually exclusive . . .' . . . for the very reason that the LHWCA specifically precludes from its provisions any employee who is 'a master or member of a crew of any vessel.' " (*Southwest Marine, Inc.* v. *Gizoni* (1991) 502 U.S. 81, 88 [112 S.Ct. 486, 492, 116 L.Ed.2d 405], citations omitted.) " '[M]aster or member of a crew' from the LHWCA is coextensive with the term 'seaman' in the Jones Act." (*Chandris, Inc.* v. *Latsis, supra,* 515 U.S. at p. 365 [115 S.Ct. at p. 2188].) "[T]he line is one which Congress has drawn between two mutually exclusive federal systems." (*Norton* v. *Warner Co.* (1944) 321 U.S. 565, 569, fn. 3 [64 S.Ct. 747, 750, 88 L.Ed. 931].)

The court has also noted that "[i]njured workers who fall under neither category *may* still recover under an applicable state workers' compensation scheme or, in admiralty, under general maritime tort principles. . . . [Citation.]" (*Chandris, Inc.* v. *Latsis, supra,* 515 U.S. at p. 356 [115 S.Ct. at p. 2184], italics added.) ■ Although some states' statutes exclude persons covered under the Jones Act from state workers' compensation benefits (see, e.g., *Commercial Union Ins. Co.* v. *McKinnon* (8th Cir. 1993) 10 F.3d

---

[3]The test for seaman status is two-pronged: (1) the employee's duties must contribute " ' "to the function of the vessel or to the accomplishment of its mission" ' "; (2) the employee must have a "connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." (*Chandris, Inc.* v. *Latsis, supra,* 515 U.S. at p. 368 [115 S.Ct. at p. 2190].)

1352, 1354), CNA acknowledges that the California Labor Code does not do so. CNA also acknowledges it has long been held that a state may apply its own workers' compensation scheme to a land-based injury that falls within LHWCA coverage. (*Sun Ship, Inc.* v. *Pennsylvania* (1980) 447 U.S. 715, 718-719 [100 S.Ct. 2432, 2435-2436, 65 L.Ed.2d 458].)

*Sun Ship, Inc.* reviewed the evolution of workers' compensation coverage. We quote that opinion at some length because it provides historical background that illuminates the issues at bar, and because it puts in context the earlier Supreme Court cases CNA cites in its petition:

"In 1917, *Southern Pacific Co.* v. *Jensen* [(1917)] 244 U. S. 205 [37 S.Ct. 524, 61 L.Ed. 1086], declared that States were constitutionally barred from applying their compensation systems to maritime injuries, and thus interfering with the overriding federal policy of a uniform maritime law. Subsequent decisions invalidated congressional efforts to delegate compensatory authority to the States within this national maritime sphere. *Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149 [40 S.Ct. 438, 64 L.Ed. 834] (1920); *Washington* v. *W. C. Dawson & Co.*, 264 U. S. 219 [44 S.Ct. 302, 68 L.Ed. 646] (1924). At the same time, the Court began to narrow the *Jensen* doctrine by identifying circumstances in which the subject of litigation might be maritime yet 'local in character,' and thus amenable to relief under state law. *Western Fuel Co.* v. *Garcia*, 257 U. S. 233 [42 S.Ct. 89, 66 L.Ed. 210] (1921); *Grant Smith-Porter Ship Co.* v. *Rohde*, 257 U. S. 469 [42 S.Ct. 157, 66 L.Ed. 321] (1922). And, in 1927, Congress was finally successful in extending a measure of protection to marine workers excluded by *Jensen* by enacting a federal compensation law—the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C. § 901 *et seq.* That statute provided, in pertinent part, that '[c]ompensation shall be payable [for an injury] . . . occurring upon the navigable waters of the United States . . . if recovery . . . through workmen's compensation proceedings may not validly be provided by State law.' 44 Stat. 1426.

"Federal and state law were thus linked together to provide theoretically complete coverage for maritime laborers. But the boundary at which state remedies gave way to federal remedies was far from obvious in individual cases. As a result, the injured worker was compelled to make a jurisdictional guess before filing a claim; the price of error was unnecessary expense and possible foreclosure from the proper forum by statute of limitations. *Davis* v. *Department of Labor*, 317 U. S. 249, 254 [63 S.Ct. 225, 228, 87 L.Ed. 246] (1942). After a decade and a half during which there had not been formulated 'any guiding, definite rule to determine the extent of state power in advance of litigation,' *id.*, at 253, the Court determined that the border

between federal and state compensation schemes was less a line than a 'twilight zone,' in which 'employees must have their rights determined case by case . . . ,' *id.*, at 256. Within this zone, *Davis* effectively established a regime of concurrent jurisdiction.

"*Calbeck* v. *Travelers Insurance Co.*, 370 U. S. 114 [82 S.Ct. 1196, 8 L.Ed.2d 368] (1962), further overlapped federal and state-law coverage for marine workers. *Calbeck* held that the LHWCA comprehended 'all injuries sustained by employees on navigable waters,' *id.*, at 124, without regard to whether the locus of an event was 'maritime but local,' and hence within the scope of state compensation provisions. We interpreted the statutory phrase 'if recovery . . . may not validly be provided by State law' to mean that the LHWCA would 'reac[h] all those cases of injury to employees on navigable waters as to which *Jensen*, *Knickerbocker* and *Dawson* had rendered questionable the availability of a state compensation remedy . . . [,] whether or not a particular one was also within the constitutional reach of a state workmen's compensation law.' *Id.*, at 126-127.

"Yet having extended the LHWCA into the 'maritime but local' zone, *Calbeck* did not overturn *Davis* by treating the federal statute as exclusive. To the contrary, *Calbeck* relied upon *Davis*, and discussed at length its proposition that an injury within the 'maritime but local' sphere might be compensated under either state or federal law. 370 U. S., at 128-129. So, too, *Calbeck*'s explanation of *Avondale Marine Ways, Inc.* v. *Henderson*, 346 U.S. 366 [74 S.Ct. 100, 98 L.Ed. 77] (1953), indicated that although an injury might be compensable under the Longshoremen's Act, 'there is little doubt that a state compensation act could validly have been applied to it.' 370 U.S., at 129. Even more significantly, *Calbeck*'s ruling that one of the employees in a consolidated case should not be held to have elected to pursue state remedies was necessarily premised upon the view that state relief was concurrently available. *Id.*, at 131-132; . . .

". . . . . . . . . . . . . . . . . . . . . . . . .

"In 1972, Congress . . . extend[ed] the LHWCA landward beyond the shoreline of the navigable waters of the United States. Pub. L. 92-576, 86 Stat. 1251, amending 33 U. S. C. § 903 (a). In so doing, the Longshoremen's Act became, for the first time, a source of relief for injuries which had always been viewed as the province of state compensation law.

"Absent any contradicting signal from Congress, the principles of *Davis* v. *Department of Labor*, *supra*, and of *Calbeck* v. *Travelers Insurance Co.*, *supra*, direct the conclusion that the 1972 extension of federal jurisdiction

supplements, rather than supplants, state compensation law. Given that the pre-1972 Longshoremen's Act ran concurrently with state remedies in the 'maritime but local' zone, it follows that the post-1972 expansion of the Act landward would be concurrent as well. For state regulation of worker injuries is even more clearly appropriate ashore than it is upon navigable waters. Compare *State Industrial Comm'n* v. *Nordenholt Corp.*, 259 U. S. 263 [42 S.Ct. 473, 66 L.Ed. 933] (1922), with *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205 [37 S.Ct. 524, 61 L.Ed. 1086] (1917). Furthermore, the 'jurisdictional dilemma,' *Davis, supra,* at 255, that results when employees must claim relief under one of two exclusive compensation schemes is as acute when the jurisdictional boundary between schemes is fixed upon land, as it is when the line is drawn between two maritime spheres. To read the 1972 amendments as compelling laborers to seek relief under two mutually exclusive remedial systems would lead to the prejudicial consequences which we described in *Davis* as 'defeat[ing] the purpose of the federal act, which seeks to give "to these hardworking men, engaged in a somewhat hazardous employment, the justice involved in the modern principle of compensation," and the state Acts . . . which ai[m] at "sure and certain relief for workmen." ' 317 U. S., at 254. See *Calbeck, supra,* at 126.

"The language of the 1972 amendments cannot fairly be understood as pre-empting state workers' remedies from the field of the LHWCA, and thereby resurrecting the jurisdictional monstrosity that existed before the clarifying opinions in *Davis* and *Calbeck.*" (*Sun Ship, Inc.* v. *Pennsylvania, supra,* 447 U.S. at pp. 717-720 [100 S.Ct. at pp. 2435-2436].)

In *Duong* v. *Workers' Comp. Appeals Bd.* (1985) 169 Cal.App.3d 980 [215 Cal.Rptr. 609], the court held that a land-based shipyard worker was entitled to receive state workers' compensation benefits for injuries incurred while making repairs on a vessel floating in federal navigable waters but tied to a dock, activities covered by both LHWCA and state compensation laws. The court further held that "[w]hen dual federal and state coverage is available, simultaneous applications under each act is permitted because the delay in determining whether both or only one of the acts covers injuries incurred in employment arguably overlapping both the state and federal jurisdictions, may allow a statute of limitations to run for claims where the applicant files only with an agency lacking jurisdiction. Where concurrent jurisdiction allows coverage under both the state and federal acts, there is no danger of double recovery because an employer's contributions under one will be credited against the other. (*Calbeck* v. *Travelers Insurance Co.* (1962) 370 U.S. 114, 131 [82 S.Ct. 1196, 1205-1206, 8 L.Ed.2d 368]." (*Id.* at p. 982.)

 The instant case differs from *Duong* in that it involves the relationship of the Jones Act to a later filed application for state workers' compensation coverage and it involves settlement agreements.[4]

CNA equates the settlement of the Jones Act claim with receipt of compensation *pursuant* to the Jones Act. Two cases, *Sharp* v. *Johnson Bros. Corp.* (5th Cir. 1992) 973 F.2d 423, and *Figueroa* v. *Campbell Industries* (9th Cir. 1995) 45 F.3d 311, have reached contrary conclusions whether an award in one jurisdiction precludes further recovery in another. Both courts analyzed case law stemming from litigation that originated in California. We now review this history.

In *Gizoni* v. *Southwest Marine Inc.* (9th Cir. 1990) 909 F.2d 385, the plaintiff was a rigging foreman who rode floating platforms that moved equipment and materials around the shipyard and on and off vessels being repaired. The plaintiff occasionally served as a lookout and gave maneuvering signals to tugboats moving the platforms. The plaintiff was injured when his foot broke through the deck of a platform in transit from the shipyard to a floating drydock. The plaintiff made a claim for and received medical and compensation benefits from his employer pursuant to the LHWCA. The plaintiff later filed a Jones Act suit against his employer, alleging negligence. The employer moved for summary judgment, asserting that the plaintiff was not a Jones Act seaman and that his claim was barred by the exclusivity provision of the LHWCA. The district court granted the motion on both grounds.

The appellate court reversed. It first held that the question whether the plaintiff was a Jones Act seaman was one of fact in that case and that the issue should have been submitted to a jury. (*Gizoni* v. *Southwest Marine Inc.*, *supra*, 909 F.2d at p. 387.) As to the second ground, the court first quoted 33 United States Code section 905(a): "The liability of an employer prescribed in section 4 shall be exclusive and in place of all other liability of such employer to the employee. . . ." It then noted that the LHWCA excluded "a master or member of a crew of any vessel" from the class of workers covered by the statute. (909 F.2d at p. 388.) The court stated it agreed with the holding of *Petersen* v. *Chesapeake & Ohio Ry. Co.* (6th Cir. 1986) 784 F.2d 732, 739: "A plaintiff is not limited to the remedies available under the

---

[4]One commentator has stated: "Since recoveries under the Jones Act are typically more generous than those under compensation acts, the successive-award problem is seldom encountered in the sequence of a Jones Act recovery followed by a compensation claim. However, when the Jones Act suit has been unsuccessful, and the claimant then turns to the Longshoremen's Act or a state compensation act, controversy may arise as to whether the first attempt has in any way prejudiced or barred the second." (4 Larson, The Law of Workmen's Compensation (1990) § 90.52, p. 6-522.)

LHWCA unless he is unable to show that a genuine factual issue exists as to whether he was a seaman at the time of his injury. [Citations.]" Given that the plaintiff's status was a question of fact, the court remanded the matter. (*Gizoni* v. *Southwest Marine Inc.*, *supra*, 909 F.2d at pp. 388-389.) We note there was no settlement agreement involved in the *Gizoni* case.

*Southwest Marine, Inc.* v. *Gizoni* (1991) 502 U.S. 81 [112 S.Ct. 486, 116 L.Ed.2d 405], affirmed *Gizoni*. *Southwest* noted: "[S]ome maritime workers may be Jones Act seamen performing a job specifically enumerated under the LHWCA."[5] (502 U.S. at p. 88 [112 S.Ct. at p. 492].) "It is by now 'universally accepted' that an employee who receives voluntary payments under the LHWCA *without a formal award* is not barred from subsequently seeking relief under the Jones Act. [Citations.] *This is so, quite obviously, because the question of coverage has never actually been litigated.* Moreover, the LHWCA clearly does not comprehend such a preclusive effect, as it specifically provides that any amounts paid to an employee for the same injury, disability, or death pursuant to the Jones Act shall be credited against any liability imposed by the LHWCA. [Citations.]" (*Id.* at p. 91 [112 S.Ct. at pp. 493-494], italics added, fn. omitted.)[6]

In *Sharp* v. *Johnson Bros. Corp.*, *supra*, 973 F.2d 423, certiorari denied 508 U.S. 907 [113 S.Ct. 2333, 124 L.Ed.2d 245], the plaintiff was injured during a bridge repair assignment while working aboard a barge chartered by

[5]Under the LHWCA, 33 United States Code section 902(3) provides: "The term 'employee' means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, any harbor-worker including a ship repairman, shipbuilder, and ship-breaker, but such term does not include— [¶] (A) individuals employed exclusively to perform office clerical, secretarial, security, or data processing work; [¶] (B) individuals employed by a club, camp, recreational operation, restaurant, museum, or retail outlet; [¶] (C) individuals employed by a marina and who are not engaged in construction, replacement, or expansion of such marina (except for routine maintenance); [¶] (D) individuals who (i) are employed by suppliers, transporters, or vendors, (ii) are temporarily doing business on the premises of an employer described in paragraph (4), and (iii) are not engaged in work normally performed by employees of that employer under this chapter; [¶] (E) aquaculture workers; [¶] (F) individuals employed to build, repair, or dismantle any recreational vessel under sixty-five feet in length; [¶] (G) *a master or member of a crew of any vessel*; or [¶] (H) any person engaged by a master to load or unload or repair any small vessel under eighteen tons net; [¶] if individuals described in clauses (A) through (F) are subject to coverage under a State workers' compensation law." (Italics added.)

[6]The court further held there is "no indication in the LHWCA that Congress intended to preclude or stay traditional Jones Act suits in the district courts. Indeed, the LHWCA anticipates that such suits could be brought. Title 33 U.S.C. § 913(d) tolls the time to file LHWCA claims '[w]here recovery is denied to any person, in a suit brought at law or in admiralty to recover damages in respect of injury or death, on the ground that such person was an employee and the defendant was an employer within the meaning of this chapter and that such employer had secured compensation to such employee under this chapter.'" (*Southwest Marine, Inc.* v. *Gizoni*, *supra*, 502 U.S. at p. 90 [112 S.Ct. at p. 493].)

his employer. The employer voluntarily initiated LHWCA compensation proceedings and commenced payments of LHWCA benefits. The plaintiff filed a Jones Act suit. The employer terminated the LHWCA payments. The plaintiff filed a LHWCA claim. As a defense to the claim, the employer and its insurer asserted that the plaintiff was a Jones Act seaman and therefore not eligible for LHWCA compensation. The parties settled the LHWCA claim with the approval of an administrative law judge. (33 U.S.C. § 908(i).) In the Jones Act litigation, the district court ultimately granted summary judgment in favor of the employer and its insurer, holding in part that the settlement agreement constituted an election of the LHWCA remedy and precluded the suit brought under the Jones Act and general maritime law.

The Fifth Circuit Court of Appeals affirmed. It noted that the district court had relied upon *Vilanova* v. *U.S.* (1st Cir. 1988) 851 F.2d 1.[7] It reviewed *Gizoni* and *Southwest Marine, Inc.,* agreeing with the *Sharp* defendants that *Gizoni* was distinguishable on the basis that " 'voluntary payments under the LHWCA without a formal award' do not bar Jones Act relief but that here the filed settlement agreement of a compensation claim does constitute a 'formal award.' " (*Sharp* v. *Johnson Bros. Corp., supra,* 973 F.2d at p. 426.)

In *Figueroa* v. *Campbell Industries, supra,* 45 F.3d 311, a California shipyard worker and tugboat operator alleged injury occurred while he was aboard a tugboat used in ship construction and repair that was tied to a San Diego dock. The plaintiff filed claims for workers' compensation benefits under both the state act and the LHWCA. Each claim for medical expenses and lost wages was compromised and settled, as reflected in a "Compromise and Release" approved by a WCJ and a "Final Compensation Order" issued by the United States Department of Labor. (*Id.* at p. 313.) The plaintiff then filed an action pursuant to the Jones Act and general maritime law. Prior to trial, the court issued an order specifying that any award would be reduced by the amount already received in federal and state workers' compensation benefits, and the plaintiff waived all claims except those for pain and suffering, which cannot be recovered under the LHWCA. The only evidence regarding damages was related to pain and suffering, and the jury awarded

---

[7]The *Vilanova* court held in part: "[U]ntil coverage has been determined by judicial or administrative decision, acceptance of LHWCA compensation paid voluntarily by the employer or the employer's insurance carrier is not a bar to suit under the FTCA [Federal Tort Claims Act]. Accordingly, Vilanova's June 1984 application for LHWCA benefits does not bar this FTCA suit. [¶] Vilanova's settlement, however, has a different effect from his application for benefits. As is required by the LHWCA, 33 U.S.C. § 908(i), the Deputy Commissioner of Labor for LHWCA compensation reviewed Vilanova's settlement and, finding that Vilanova's injuries were compensable under the LHWCA, approved it. Vilanova was advised by counsel during the settlement negotiations. Thus, in the settlement negotiations, Vilanova had an opportunity to contest LHWCA compensation before the Department of Labor. He chose not to do so." (*Vilanova* v. *U.S., supra,* 851 F.2d at p. 5, fns. omitted.)

damages solely on that ground. By special verdict, the jury found the plaintiff had been a member of the crew and a seaman at the time he was injured.

On appeal, the employer argued that the LHWCA settlement was an implicit finding that the plaintiff was not a "member of a crew" and not a "seaman," and also met the "formal award" requirement of *Southwest Marine, Inc.*, thus barring any Jones Act recovery. The appellate court affirmed the judgment, first citing the holding in *Southwest Marine, Inc.*, that a maritime worker whose occupation is included in those enumerated in the LHWCA may yet be a Jones Act "seaman" and entitled to bring an action under that statute. It dismissed the employer's formal-award argument, stating that *Southwest Marine, Inc.*, "noted that the justification for this rule was not because no formal award had issued, but rather because double recovery under the two statutes is precluded: 'This is so, quite obviously, because the question of coverage has never actually been litigated. Moreover, the LHWCA clearly does not comprehend such a preclusive effect, as it specifically provides that any amounts paid to an employee for the same injury, disability, or death pursuant to the Jones Act shall be credited against any liability by the LHWCA.' [*Id.* at p. 91.] . . . [¶] 'For this same reason, equitable estoppel arguments . . . must fail. Where full compensation credit removes the threat of double recovery, the critical element of detrimental reliance does not appear . . . . [Such an] [a]rgument] . . . would force injured maritime workers to an election of remedies we do not believe Congress to have intended.' [*Id.* at p. 92, fn. 5.]" (*Figueroa* v. *Campbell Industries*, *supra*, 45 F.3d at p. 315.) The appellate court noted that the LHWCA compensation order had made no finding regarding the jurisdictional issue. (*Id.* at p. 315.)[8]

---

[8]See 9 Larson, The Law of Workmen's Compensation, *supra*, section 90.51, subdivision (b): "As to election between the Jones Act and the Longshoremen's Act, the defense has been rejected on the technical ground that the doctrine of election applies only when the two remedies are coexistent. Since these two remedies are not coexistent but mutually exclusive, and since plaintiff's remedy legally must be only under one or the other act, plaintiff cannot be deemed to have made a valid election. [¶] A more fundamental answer to the election defense, and one that applies as well to state compensation acts, is the argument, advanced in other connections where the doctrine has made its appearance, that the doctrine of election simply has no place in modern social insurance law. Whatever may have been its justification in the process of setting up ground rules for private adversary legal contests, it makes no sense when applied to public protective systems created to serve public as well as private purposes. The community has decided that injured workers and their families shall have as a minimum the security that goes with nonfault compensation. It is not for the individual, once he or she is part of that system, to elect whether its protection is a good idea or not. If the individual accepts or claims its benefits, this is not an election but merely the setting in motion of a protective process ordained by the state. This being so, it would undermine and prejudice the operation of this protective public program if the claimant were put in the

With respect to the employer's estoppel argument, the *Figueroa* court cited *Guidry* v. *Ocean Drilling and Exploration Co.* (W.D.La. 1965) 244 F.Supp. 691, 692, a case which involved an award pursuant to the LHWCA but no settlement: "'where the [LHWCA] Deputy Commissioner's finding and award do not disclose any facts upon which his jurisdiction existed, the rule should be and is that complainant's right to determine his status as a seaman under the Jones Act, 46 U.S.C.App. § 688, is not prejudiced thereby, and these questions are not subject to a plea of res judicata under the [LHWCA].'" (*Figueroa* v. *Campbell Industries, supra,* 45 F.3d at p. 316.) *Figueroa* also cited *Biggs* v. *Norfolk Dredging Company* (4th Cir. 1966) 360 F.2d 360, which permitted two injured workers to bring Jones Act suits following one worker's receipt of compensation under the LHWCA and the other, under the state workers' compensation statute. Again, no settlements were involved.

We note that in *De Court* v. *Beckman Instruments, Inc.* (1973) 32 Cal.App.3d 628 [108 Cal.Rptr. 109], the widow and children of a diver hired to test underwater equipment first recovered a state workers' compensation award and then filed an action against the decedent's employer to recover damages under the Jones Act. The trial court gave summary judgment to the employer. The court of appeal reversed, concluding that the workers' compensation forum had not determined the issue of jurisdiction under the Jones Act and such "can hardly be said to have been properly determined by implication. . . ." (*Id.* at p. 635; see also the following cases which allowed additional recovery but did not involve settlements: *Boatel, Inc.* v. *Delamore* (5th Cir. 1967) 379 F.2d 850, 855 [LHWCA followed by Jones Act]; *Mike Hooks, Inc.* v. *Pena* (5th Cir. 1963) 313 F.2d 696 [Texas compensation award followed by Jones Act]; contra, *Benders* v. *Board of Governors* (R.I. 1994) 636 A.2d 1313 [Jones Act settlement extinguishes employer's state workers' compensation obligations]; *Hagens* v. *United Fruit Co.* (2d Cir. 1943) 135 F.2d 842 [LHWCA award followed by Jones Act].)

We return to the language of *Southwest Marine, Inc.*: "It is by now 'universally accepted' that an employee who receives voluntary payments

position of risking the loss of other valuable rights, such as those under the Jones Act, by the mere fact of accepting or invoking this basic system of compensation protection. It is of the nature of compensation, as distinguished from damage actions, that it is intended to be both prompt and reliable, in order to perform its function of caring for the immediate economic and medical needs of an injured worker and his or her family. If, then, he or she accepts or claims compensation as his or her first move, perhaps fully intending to follow this with a Jones Act action, this should not be thought to be sinister, deceitful, or avaricious on his or her part. The worker is setting out to ensure that the worker gets the minimal social insurance protection that the worker may be entitled to. If it turns out later that the worker is entitled to a more generous award under a different system, since the compensation award will be credited on the larger award, there has been no serious harm done." (*Id.* at pp. 16-511 to 16-513, fns. omitted.)

under the LHWCA *without a formal award* is not barred from subsequently seeking relief under the Jones Act. [Citations.] *This is so, quite obviously, because the question of coverage has never actually been litigated.*" (502 U.S. at p. 91 [112 S.Ct. at pp. 493-494], italics added.)

Obviously, parties settle for many reasons but surely economics is the driving force. The agreements hammered out by counsel in the instant case took into consideration the circumstances of Baker's injury, her likely entitlement to various benefits, and the benefits previously paid. The parties never brought the issue of jurisdiction to the LHWCA or state court forums that approved the settlement agreements. CNA absented itself from the negotiations, thus precluding it from raising the jurisdiction issue in the federal forum. There were no trials on the issue in any forum. The orders approving the settlement agreements did not include express findings of jurisdiction. It can be said, therefore, that "the question of coverage has never actually been litigated." (*Southwest Marine, Inc.* v. *Gizoni, supra,* 502 U.S. at p. 91. [112 S.Ct. at p. 494].)

We are unable to rationalize the diverse outcomes of *Figueroa* and *Sharp*. The First Circuit's *Vilanova* position, cited by *Sharp*, is distinguishable in that the order approving the settlement therein included express jurisdictional findings. (See fn. 7, *ante*.) The survey of these and numerous other cases teaches that the lines drawn are sometimes driven by the language of the state statutes, sometimes by the evidence, sometimes by actual findings of fact or the lack thereof, sometimes by philosophy.

During the early development of the "maritime but local" doctrine, which recognized a state's interest in preventing injured citizens from becoming destitute and public charges, the Massachusetts Supreme Judicial Court summarized the problem of the diversity of opinions and suggested an approach with which we agree:

"[A]lthough apparently some heed must still be paid to the line between State and Federal authority as laid down in the cases following the *Jensen* case [*Southern Pacific Co.* v. *Jensen* (1917) 244 U.S. 205 [37 S.Ct. 524, 61 L.Ed. 1086]], the most important question has now become the fixing of the boundaries of the new 'twilight zone,' and for this the case gives us no rule or test other than the indefinable and subjective test of doubt. . . . Probably therefore our proper course is not to attempt to reason the matter through and to reconcile previous authorities, or to preserve fine lines of distinction, but rather simply to recognize the futility of attempting to reason logically about 'illogic,' and to regard the *Davis* case [*Davis* v. *Department of Labor* (1942) 317 U.S. 249 [63 S.Ct. 225, 87 L.Ed. 246]] as intended to be a revolutionary

decision deemed necessary to escape an intolerable situation and as designed to include within a wide circle of doubt all water front cases involving aspects pertaining both to the land and to the sea where a reasonable argument can be made either way, even though a careful examination of numerous previous decisions might disclose an apparent weight of authority one way or the other." (*Moores' Case* (1948) 323 Mass. 162 [80 N.E.2d 478, 480-481], affd. *Bethlehem Steel Co.* v. *Moore* (1948) 335 U.S. 874 [69 S.Ct. 239, 93 L.Ed. 417].)

Professor Larson has simply stated that "in those rare instances in which a 'successful' Jones Act proceeding might precede a compensation claim, the normal principle ought logically to be that the same rules apply as in the much more numerous cases in which the sequence is reversed." (9 Larson, The Law of Workmen's Compensation Law, *supra*, § 90.52, p. 16-547.)

Here, Baker is a California resident, employed under a contract made within this state, and injured within territorial waters where the City of Avalon has control over the floating dock involved. All parties accept that the LHWCA and the state have concurrent jurisdiction where there is a showing of local interest. We conclude that Baker's contacts with California, coupled with the state's interest in the welfare of its citizens, conferred upon it concurrent jurisdiction with the Jones Act as well.

*CNA's Additional Contentions and Arguments*

CNA suggests that the recent case of *Yamaha Motor Corp.* v. *Calhoun* (1996) 516 U.S. 199 [116 S.Ct. 619, 133 L.Ed.2d 578] supports its position. *Yamaha* involved the death of a nonseaman who was killed while using a jet ski in territorial waters. The *Yamaha* court reviewed the tortured history of recovery in maritime wrongful death cases, concluding that state remedies were available when a nonseaman was killed in a jet ski accident within territorial waters. (*Id.* at pp. 206-215 [116 S.Ct. at pp. 624-628].) It is questionable whether *Yamaha* is helpful to CNA, but in any event the instant case does not involve a wrongful death claim. (Cf. *Southwest Marine, Inc.* v. *Gizoni, supra*, 502 U.S. at pp. 90-91 [112 S.Ct. at pp. 493-494] [noting that the LHWCA is less complex and comprehensive than the National Labor Relations Act, 29 U.S.C. § 151 et seq., and lacks the exclusivity language of the Federal Employees' Compensation Act, 5 U.S.C. § 8101 et seq.].)

CNA acknowledges that "where the subject-matter falls within admiralty jurisdiction, state law may 'supplement' federal maritime law but may not directly contradict it. [Citations.]" (*Southworth Machinery* v. *F/V Corey*

*Pride* (1st Cir. 1993) 994 F.2d 37, 41 [attorney fee provision in state statute held inconsistent with maritime law].) CNA fails to state in what way it believes the state workers' compensation law contradicts the federal law, asserting only that "Congress, through the Jones Act, has addressed already what remedies are available to seamen injured in territorial waters."

CNA frequently suggests that Baker is somehow obtaining a double recovery if CNA is held to be liable for the payments ordered. The record does not support its position. All expenses except for the $6,622.08 addressed by the WCJ were paid by Navigators on behalf of Employer. The settlement agreements took those payments into consideration. The amount assessed CNA consists of several small unpaid medical bills and money advanced by the California Employment Development Department. While the record indicates that Baker received the services billed and the income, there is no evidence these constituted a double recovery.

■ CNA cites California Labor Code section 3602 for the proposition that the state workers' compensation scheme is exclusive and that the employee may not seek redress in other forums.[9] It is generally understood that the exclusivity provision refers only to other California forums. (See *Fermino* v. *Fedco, Inc.* (1994) 7 Cal.4th 701, 718-719 [30 Cal.Rptr.2d 18, 872 P.2d 559].)

### DISPOSITION

Writ denied. Costs on appeal are awarded to real parties in interest.

Vogel (C. S.), P. J., and Epstein, J., concurred.

Petitioner's application for review by the Supreme Court was denied January 14, 1998.

---

[9]Labor Code section 3602 provides as pertinent: "(a) Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is, except as specifically provided in this section and Sections 3706 [failure to secure compensation for damages] and 4558 [absence of power press guards], the sole and exclusive remedy of the employee or his or her dependents against the employer, . . ."